361 P.2d 665

**DIAMOND T. UTAH, INC., et al., Plaintiff and Respondent,**

v.

**CANAL INSURANCE COMPANY, Defendant and Third-Party Plaintiff and Respondent,**

v.

**UNDERWRITERS AT LLOYDS, LONDON, Third-Party Defendant and Appellant.**

No. 9284.

Supreme Court of Utah.

May 2, 1961.

under the terms of a reinsurance certificate, for 75 per cent of its liability, if any, to plaintiff. By agreement of the parties, the lower court provided in its pretrial order that the issue of Canal's liability would be tried first, and, if resolved against Canal, then the issue of liability of Lloyds would be tried, otherwise not.

The lower court, sitting without a jury, first found the issues in favor of plaintiff as against Canal and entered judgment accordingly. Trial was then had upon Lloyds' liability to Canal and judgment entered in favor of Canal. Canal appeals only from the first judgment and Lloyds appeals from both.

On March 29, 1957, Sherman N. Drain and John A. Drain, doing business as D & W Transport, entered into a conditional sale contract with plaintiff for the purchase of a truck tractor. This contract was sold by plaintiff to Zions National Bank, but plaintiff subsequently repurchased it and has succeeded to the rights of the bank.

On April 7, 1958, Mr. Roy G. James, an insurance agent acting for D & W, placed a policy of insurance covering physical damage to the tractor with Canal. A down payment on the premium was made on this

Skeen, Worsley, Snow & Christensen, Salt Lake City, for appellant.

Homer F. and Harold N. Wilkinson, Moreton, Christensen & Christensen, Salt Lake City, for respondents.

CALLISTER, Justice.

Plaintiff, Diamond T Utah, Inc., commenced an action against Canal Insurance Company under a physical damage insurance policy. Canal filed a third-party complaint against Underwriters at Lloyds, London,[1] seeking to hold the latter liable,

---

1. It has been stipulated by the parties that all pleadings, proceedings and references to Underwriters at Lloyds London, including the title of the case, be amended to read "Leslie Fowle," said Leslie Fowle being the principal underwriter under Reinsurance Certificate No. AM 0165-93 involved herein.

date with the balance to be paid in monthly installments. Subsequently, Canal, through Surplus Line Company, wrote an automobile public liability policy for D & W but it was never delivered because no payment was made on the premium. Some time later, and prior to May 14, 1958, Canal directed Surplus Line to secure full liability coverage on the D & W account or terminate the physical damage risk. James reported to Surplus that there was no possibility of securing full liability coverage.

The monthly installment on the physical damage policy due May 7, 1958, was not paid. On May 14, 1958, according to the testimony of two employees of Surplus, a notice of cancellation was prepared and copies thereof, properly stamped, mailed to the insured, to Zions National Bank, to James, and to Canal. Thereafter, on June 4, 1958, Surplus advised Canal that the policy had been canceled, effective May 24, 1958. However, on June 6, 1958, Surplus received a check from James in the sum of $181.04 to apply on the D & W account.

The tractor described in the physical damage policy was involved in an accident on June 30, 1958, and was extensively damaged, giving rise to this claim.

Upon pretrial the issues between plaintiff and Canal were limited to (1) whether the policy was in effect on the date of the loss, and, (2) the amount of damages. At the time of trial the parties were able to stipulate as to the damages, leaving only the first issue to be litigated. After receiving evidence and hearing testimony thereon, the trial court found that the policy was in full force and effect at the time of the loss, not having been canceled prior thereto, and awarded plaintiff judgment.

Both Canal and Lloyds moved for a new trial. The court, after hearing arguments, amended its findings and denied the motions. In the amendment the court, while leaving undisturbed its original finding that the policy had not been canceled, specifically found that the notice of cancellation had been mailed, but that Canal was estopped to claim that the notice had been mailed or that the policy had been canceled, because of the retention by Canal of the premium payment made on June 6, 1958. The court granted plaintiff "permission to amend the pretrial order and file a reply in order to allege estoppel, to conform to the proof."

With respect to this first judgment, both Canal and Lloyds assert that the lower court erred (1) in finding that the policy was not canceled and (2) in finding that Canal was estopped from claiming the notice was mailed and the policy canceled, and permitting the plaintiff after judgment to amend the pretrial order and its pleadings to raise the issue of estoppel.

The provision of the policy relating to cancellation provides:

" \* \* \* This policy may be canceled by the company by mailing to the insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. \* \* \* "

█ The foregoing provision, known in the insurance trade as a "standard cancellation clause," has been the subject of many court decisions. The majority of these decisions, under what we believe to be the best reasoning, hold that the actual receipt of the cancellation notice by the insured is not a condition precedent to the cancellation of the insurance by the insurer, provided the cancellation notice itself contains a fixed date on which the cancellation is to become effective.[1] The rationale of these decisions is that the express terms of the contract uphold the sufficiency of a notice deposited in the mail, and that such provision, being unambiguous, must be enforced as written.

However, the notice which was mailed in the instant case did not comply with the provisions of the cancellation clause. It provided, in capital letters:

"THE EFFECTIVE DATE OF CANCELLATION SHALL BE FIVE (5) DAYS AFTER SERVICE OF THIS NOTICE."

█ Under the terms of this notice, the date of cancellation is to be determined by computing from the date it was served upon the insured. The fact that the notice specified five days is probably immaterial, the insured being entitled to 10 days regardless. However, the 10-day period would commence running from the date of service, which must be ascertained, and proof of mailing would not establish that date.

█ Cancellation of an insurance policy can only be effected by a strict compliance with the terms and conditions upon which such right depends [2] and the provisions of the policy relating to cancellation by the insurer must be strictly construed in favor of the insured.[3]

█ The form and manner in which the notice of cancellation was given was the choice of Canal's agent. The notice did not fix a date certain upon which the cancellation was to be effective but instead provided for a time to become fixed by the

1. 64 A.L.R.2d 982, 1000.
2. 6 Appleman, Insurance Law & Pr., p. 709.
3. 64 A.L.R.2d 982, 990.

happening of a future event, namely the service of the notice upon the insured, from the occurrence of which event the period of 10 days would commence to be computed. Thus, Canal not having strictly complied with the policy provisions, the mere mailing of the notice was not sufficient proof of notice.[4] The burden was upon Canal to prove if and when service of the notice was made on the insured.

■ Whether or not the use of the term "service of this notice" in the notice connotes something more than "receipt" of the notice, we need not decide because the evidence justified the court in believing that the notice was not received. While the evidence as to receipt of the notice was somewhat in conflict, and there is probably a presumption that mail properly addressed and deposited is received, both Sherman N. Drain and the manager of the bank testified that they did not receive the notice. Thus, the lower court properly held that the insurance policy was not canceled and was in force and effect at the time of the loss.

In view of the foregoing conclusion, it is not necessary to determine the issue of estoppel and the permitting of plaintiff to amend its pleadings and the pretrial order after judgment.

■ The issue of Lloyds' liability to Canal was submitted to the lower court, sitting without a jury, upon a written stipulation of facts. It appears that on April 7, 1958, Lloyds issued to Canal a certificate of reinsurance wherein Lloyds agreed to reinsure, to the extent of 75 per cent, the risk insured by Canal under its physical damage policy with D & W. On June 19, 1958, Canal received from Lloyds' agent a paper designated "General Change Endorsement" which referred to the reinsurance certificate and was to be effective May 24, 1958. It stated, "In consideration of a return premium of $418.08 and $4.18 reinsurance tax, this certificate terminated in conjunction with overlaying Canal policy." By letter to Lloyds' agent, dated June 26, 1958, Canal acknowledged receipt of the General Change Endorsement in the following language:

"We are in receipt of endorsement which terminates reinsurance certificate AM 0165–93 for the above risk."

■ The General Change Endorsement, relied upon by Lloyds as notice of cancellation, does not conform to the cancellation clause of the reinsurance certificate. This clause provides that the certificate may be canceled by Lloyds, with or without tender of unearned premium, by

4. Brewer v. Maryland Cas. Co., Tex.Civ.App.1952, 245 S.W.2d 532.

**42**

giving 10 days' notice in writing stating therein the effective date of such cancellation. Thus, it is to be noted that the endorsement did not give 10 days' notice and, although not required under the cancellation clause, made the termination in consideration of a return premium. There is no evidence that the return premium was ever tendered to Canal or received or accepted by it.

Furthermore, the phrase "in conjunction with overlaying Canal policy" is reasonably susceptible of an interpretation that the endorsement was not to effect a cancellation of the reinsurance unless and until the Canal policy was canceled.[5]

Notices of cancellation, to be effective, must be clear, unequivocal and unconditional and any ambiguities contained therein must be resolved in favor of the insured and against the insurer.[6] It therefore follows that the lower court did not err in finding that the reinsurance certificate had not been canceled and awarding judgment to Canal.

Affirmed. Costs to respondents.

WADE, C. J., and HENRIOD, McDONOUGH and CROCKETT, JJ., concur.

5. Webster's New International Dictionary, 2d Ed., p. 564; "Conjunction * * * 3. occurrence together; concurrence, as of events."

6. 6 Couch, Cyclopedia of Insurance Law, p. 5098.