366 P.2d 476

**COMMERCIAL CREDIT CORPORATION, a corporation, Plaintiff and Respondent,**

v.

**PREMIER INSURANCE COMPANY, a corporation, Defendant and Appellant.**

No. 9450.

Supreme Court of Utah.

Nov. 28, 1961.

---

Clayton & Gould, Ogden, for appellant.

Callister & Kesler, Salt Lake City, for respondent.

CROCKETT, Justice.

1. That in case of doubt or uncertainty contracts are to be so construed, see Huber

On January 9, 1960, Cecil R. Stacey had a wreck in his 1959 Ford automobile which he was purchasing on conditional sales contract owned by plaintiff, Commercial Credit Corporation. He had had a collision insurance policy issued by defendant, Premier Insurance Company, in which Commercial Credit was named as loss payee. But on November 25, 1959, about six weeks prior to the accident, Mr. Stacey had requested Premier Insurance to cancel the policy, which it did and returned the unearned premium to him without giving any notice to Commercial Credit. Upon the foregoing facts, disclosed at pre-trial, the court rendered summary judgment on the policy in favor of the plaintiff, Commercial Credit, and against the defendant, from which the latter appeals.

The question is this: did the failure of Premier Insurance to give notice of cancelation to the loss payee, Commercial Credit, have the effect of continuing the policy in force as to that company.

The first source to look for the answer is in the policy, which is to be construed to resolve any doubts or uncertainties against the defendant inasmuch as that company prepared and issued it.[1] In that regard certain of its provisions have particular significance: it

"* * * may be canceled by the *insured named in the declarations* by

& Rowland Const. Co. v. City of South Salt Lake, 7 Utah 2d 273, 323 P.2d 259.

surrender thereof to the company * * or by mailing to the company written notice stating when thereafter the cancelation shall become effective." (Emphasis added.)

The name of the purchaser, Stacey, does not appear in the portion of the policy denoted as "declarations." The only party listed there is the loss payee. So while it is true that the provision above quoted authorizes cancelation by the "insured" and does not expressly obligate the company to give notice, it is plainly indicated that the loss payee was recognized as having an interest in the policy. This is further borne out by the fact that the "definitions" in the policy define the "insured" in terms of the ownership of the automobile; and that an endorsement, issued by the insurance company as a separate document, provided, "any loss hereunder is payable, as interest may appear, to the insured * * * and Commercial Credit Corporation."

It is appreciated that it was the primary insured (Stacey) who took out the insurance and paid for it, and that he had a right to cancel and obtain a refund of the unearned portion of the premium. Nevertheless, by issuing the separate endorsement the defendant Premier acknowledged the loss payee (Commercial Credit) as an insured under the policy. This it may not have had to do, but having done so, it was obliged to know that the loss payee would be looking to it for protection. Defendant Premier was then duty bound to treat the loss payee, Commercial Credit, as an insured whose rights could not be canceled without notice.

Under such circumstances it would be manifestly unjust to permit the insurer to enter into an agreement with one of the insured parties, unbeknown to the other, to cancel the policy and leave the latter both unprotected and without warning so it could take measures to forestall loss. The insurance company (Premier) is in a better position than the co-insured (Commercial Credit) to know of any change in the status of the policy. It seems neither unfair nor unduly burdensome to require the insurance company to make at least reasonable efforts to notify the co-insured before cancelation becomes effective as to the latter. Difficulty will result only where, as here, the insurance company, aware of its obligation to an insured who may suffer loss by unwarned withdrawal of the protection, fails to notify the latter so that it can safeguard its interests.

That the foregoing conclusion is consistent with the duty of an insurance company to those it holds out protection to is attested by the fact that the defendant's own office, on January 26, 1960, two weeks after the loss occurred, sent a letter to the plaintiff which read in part:

"Enclosed are copies of two letters pertaining to Mr. Stacey's request for cancellation. *It was our omission in*

*not notifying you."* (Emphasis added.)

In spite of the defendant's protestations that this employee was not authorized to make any such admission, this letter reflects a sensible and practical view of the obligation of an insurance company to its insured where more than one are covered by its policy.

Affirmed. Costs to plaintiff (respondent).

WADE, C. J., McDONOUGH, J., and PARLEY E. NORSETH, District Judge, concur.

HENRIOD, Justice.

I dissent. The main opinion seems to overlook the real point. The policy provided two ways for cancellation, 1) by the *assured,* and 2) by the *company.* Where cancelled by the *assured,* the company had no duty to notify anyone. That is *this* case. Where the *company* cancelled the policy it was required to notify the assured *and* the loss-payee. That is *not* this case.

The company did everything incumbent upon it to do under the plain, unambiguous language of the policy.

The main opinion accurately points out that the insurance company assumed the risk for both the assured and the loss-payee, but this has nothing whatever to do with the question of what notice must be given if the *assured* cancels the policy. None is required. The observation in the main opinion that it would be manifestly unjust not to protect the loss-payee here, may be a *philosophical suggestion,* and a subject for invocation of equity on some sort of quasi-contractual theory (which I doubt would get anywhere), but not in this case where an *action at law* was instituted *based on the plain terms of a written contract.* Clearly the provisions of the policy are done complete violence by the summary judgment in favor of the loss-payee. The same conclusion is inescapable anent the ipse dixit of the majority opinion that it does not seem unfair that the insurance people should be required to notify the loss-payee. They never *agreed* to do so under the clear terms of the policy. And the argument about resulting difficulty if notice be not given the loss-payee, flies in the teeth of the plain terms of the policy. To decide that the loss-payee was entitled to notice under the facts here, in light of the policy, is to supply non-existent terms in an integrated contract, without consideration and in violation of the parol evidence rule, favoring one over another of the principals therein.

By some sort of casuistry, the main opinion says that by recognizing the loss-payee as an insured, which it need not have done, the insurer was obliged to know the loss-payee would expect to be protected, and therefore, by the most illogical non-sequitur in the whole opinion, it is concluded that

therefore "Defendant Premier was then duty bound to treat the loss payee * * * as an insured whose rights could not be canceled *without notice*." This is a gratuity indulging the luxury of forcing, by judicial fiat, one party to a contract to become bound by that which he deliberately, and in writing, refused to do. It would be interesting to see the reaction of those in the insurance field, in examining this decision, and it would be more interesting to observe the crimson reaction of the attorneys who obviously and carefully drafted a cancellation clause to protect their clients against the very eventuality that occurs here, viz., this *decision*.

CALLISTER, J., having disqualified himself, did not participate.