380 P.2d 69

BENNETT MOTOR COMPANY, Plaintiff and Appellant,

v.

Mark L. LYON, The Travelers Insurance Company, a corporation, Defendants,

United States Fidelity and Guaranty Company, Defendant and Respondent.

No. 9680.

Supreme Court of Utah.

April 1, 1963.

**162**

Richards, Bird & Hart, Salt Lake City, for appellant.

Skeen, Worsley, Snow & Christensen, Salt Lake City, for respondent.

CALLISTER, Justice.

Action to recover damages for the destruction of a motor vehicle caused by fire. Plaintiff, during the course of the trial, made a settlement with defendant Travelers Insurance Company (Travelers) and the action against it was dismissed. Defendant Mark L. Lyon suffered a default judgment and has not appealed. Plaintiff appeals from a judgment of no cause of action in favor of defendant United States Fidelity and Guaranty Company (U. S. F. & G.).

On August 15, 1958, Lyon entered into a conditional sale contract with plaintiff for the purchase of a dump truck. Thereafter, and prior to December of 1959, Lyon obtained insurance coverage upon the truck with two different insurers. In both instances the coverage was cancelled for nonpayment of premiums.

On December 16, 1959, U. S. F. & G. issued to Lyon a liability and physical damage insurance policy upon the dump truck in which he was the named insured. On January 8, 1960, a loss payable clause, naming plaintiff as the loss-payee or lienholder, was issued by U. S. F. & G. as an endorsement to the policy.

It was the contention of U. S. F. & G., and the lower court so found, that this policy and the endorsement had been cancelled on or about April 23, 1960. Plaintiff assigns this finding as error.

On September 15, 1960, Travelers issued to Lyon, as the named insured, an insurance policy covering the dump truck. It also had a loss payable endorsement erroneously naming a bank, rather than plaintiff, as the loss-payee. This policy was in force and effect at the time of the loss, which occurred on October 21, 1960. On this latter date, Lyon totally destroyed the truck by intentionally setting fire to it.

The initial question presented is whether such a loss was covered by the loss payable clause. Under "Coverage F" of the policy in question, U. S. F. & G. agreed:

"To pay for direct and accidental loss or of damage to the automobile, hereinafter called loss, caused (a) by fire * * *."

The loss payable endorsement was in the form known to the insurance trade as a "standard" or "union" clause. It provides, so far as is pertinent to this initial question, as follows:

"Loss or damage, if any, under the policy shall be payable as interest may appear to lienholder Bennett Motor Company, 47 West 6th South, and this insurance as to the interest of the Bailment Lessor, Conditional Vendor or Mortgagee or Assignee of Bailment Lessor, Conditional Vendor or Mortgagee (herein called the Lienholder) *shall not be invalidated by any act or neglect of the Lessee, Mortgagor or Owner* of the within described automobile nor by any change in the title or ownership of the property; provided, however, that the conversion, embezzlement, or secretion by the Lessee, Mortgagor or Purchaser in possession of the property insured under a bailment lease, conditional sale, mortgage or other encumbrance is not covered under such policy, unless specifically insured against and premium paid therefor; * * *." (Emphasis added.)

Under the circumstances of this case, it is apparent that Lyon could not recover for the loss.[1] As to him it certainly would not be direct or accidental. This being so, U. S. F. & G. argues, the *coverage* of the policy does not include arson by the insured and the plaintiff, the loss payee, is bound by the limits of the coverage contained in the policy itself and therefore cannot recover.

Plaintiff lays great stress upon the phrase "shall not be invalidated by any act or neglect of the Lessee," etc. contained

1. 29 A Am.Jur., p. 427.

in the loss payable clause. Plaintiff correctly points out that the standard or union loss payable clause creates an independent contract between the insurer and the mortgagee or lienholder for the latter's benefit. It is a separate and distinct agreement from that between the insurer and the mortgagor. The rights of the lienholder are not derivative from the rights of the named insured.[2]

■ U. S. F. & G. concedes that the loss payable endorsement effects a separate contract with the lienholder and that such separate contract may not be invalidated by acts or omissions of the mortgagor even though such acts or omissions would clearly invalidate the contract with the mortgagor. It argues, however, that the separate contract with the mortgagee does not rewrite the policy or enlarge it to include a kind of loss not insured against under the language of the coverage provisions of the policy.

In other words, it is the position of U. S. F. & G., and so found by the lower court, that the instant loss was not "direct or accidental," and thus not covered by the policy. This is certainly true as to Lyon. However, plaintiff has a contract with U. S. F. & G. separate from that of Lyon's. If we had a situation where there was no loss payable endorsement to the policy and a third party, without complicity on the part of the named insured, intentionally set fire to the insured vehicle, the loss would be considered "direct and accidental" and therefore covered.[3] In the instant situation Lyon is in the position of a third party with regard the separate contract between plaintiff and U. S. F. & G. and his act of arson resulted in a "direct and accidental" loss which was covered by the agreement between plaintiff and U. S. F. & G. This result would not extend or enlarge the coverage provided plaintiff under its insurance contract over that provided to Lyon.

The lower court also found that: "Although the plaintiff and defendant Lyon deny having received notice of cancellation the court finds that such notice was sent them in the ordinary business routine and practice" of the agent of U. S. F. & G. The lower court then concluded that the policy in question was "cancelled and not in effect at the time of the loss."

Plaintiff has taken issue with the foregoing finding and conclusion. Plaintiff contends that the provisions of the loss payable clause relating to cancellation would require proof of the actual receipt of the notice of cancellation. However, plaintiff

---

**2.** 5 Appleman, Insurance Law and Practice, § 3401.

**3.** See: Aetna Life Ins. Co. v. Carpenter, 170 Va. 312, 196 S.E. 641; Hartford Fire Ins. Co. v. Clark, 258 Ala. 141, 61 So.2d 19.

argues, even if the agreement required only proof of the mailing of the notice, U. S. F. & G. did not sustain the burden of proving this.

■ The policy itself contained what is known as a "standard cancellation clause" in which it was provided the mailing of the notice would be sufficient proof of notice. Such provisions have been recognized.[4] Whether or not the loss payable clause could be construed to contain such a provision we need not determine for the evidence of U. S. F. & G. fell short of proving that a notice of cancellation was mailed to plaintiff.[5] U. S. F. & G. introduced testimony relating to the business routine and practice of its agent in preparing and mailing such notices. However, the employee charged with the duty of actually mailing such notices did not testify and it was not shown that such routine or practice had been followed with regard to the instant alleged notice.[6] Furthermore, the evidence was to the effect that it was the practice and routine to secure a certificate of mailing from the post office for each notice of cancellation. U. S. F. & G. did not, or was unable, to produce a certificate of mailing for the notice allegedly sent to plaintiff. Therefore, the lower court erred in finding that the loss payable clause had been cancelled prior to the time the loss occurred.

■ Finally, U. S. F. & G. contends that even though it be determined that it is liable to plaintiff, the latter is barred from recovery because the dismissal of the action as to Travelers impaired U. S. F. & G.'s subrogation rights. This contention is without merit. At the time of the dismissal, plaintiff stipulated that any judgment obtained against U. S. F. & G. would be reduced by one-half. We have here a situation where both the insurance companies were in the position of having a loss upon which the named insured could have no recovery but the lienholder had equal rights against both. If Travelers had not been joined in the action and U. S. F. & G. had been required to pay the entire loss, U. S. F. & G. would only be entitled to a proportionate contribution from Travelers [7]—in this case one-half.

Reversed. Costs to plaintiff.

HENRIOD, C. J., and McDONOUGH, CROCKETT and WADE, JJ., concur.

4. See: Diamond T. Utah, Inc. v. Canal Insurance Co., 12 Utah 2d 37, 361 P.2d 665.
5. That a loss payee must be notified of a cancellation see Commercial Credit Corp. v. Premier Ins. Co., 12 Utah 2d 321, 336 P.2d 476.
6. Matsko v. Dally, 49 Wash.2d 370, 301 P.2d 1074.
7. 6 Appleman, Insurance Law and Practice, § 4913.