Sherry A. Murdock JOHNSON, Appellant,

v.

ALLSTATE INSURANCE COMPANY
and Union National Bank of
Arkansas, Appellees,

v.

Jack D. MURDOCK, Defendant.

No. 80778.

Court of Appeals of Oklahoma,
Division No. 3.

Dec. 21, 1993.

Rehearing Denied Feb. 1, 1994.

Frank R. Hickman, Tulsa, for appellant.

Roger R. Williams, L. Richard Howard, Tulsa, for appellees, Allstate Ins. Co.

## OPINION

GARRETT, Judge:

Appellant, Sherry A. Murdock Johnson (Sherry) sued Allstate Insurance Company (Allstate), Union National Bank of Arkansas (Bank), and Jack D. Murdock (Jack). The purpose of the action was to collect the proceeds of an insurance policy covering her former home in Tulsa, Oklahoma, after it had been destroyed by fire. The trial court overruled Sherry's motion for summary judgment, sustained Allstate's motion for summary judgment, entered judgment for Allstate against Sherry, and denied Sherry's motion for attorney fees from Bank. Sherry appeals. A motion to dismiss appeal based on 12 O.S.1991 § 1006 was denied by the Supreme Court.

Jack and Sherry were divorced on May 8, 1991. The Divorce Decree, in its division of property, vested title to the home of the parties in Jack, subject to the balance due on a note, secured by a mortgage on the home in favor of Bank, which he was ordered to pay. Jack was also ordered to pay various other debts of the parties, and to hold Sherry harmless as to them. She was ordered to execute and deliver to Jack a quit claim deed to the home, and she did so. The deed contained a recital that it was executed pursuant to the order in the Divorce Decree. She was not given any lien or claim against the home as security in the event Jack failed to pay the debts of the parties, as ordered by the Court. The quit claim deed did not reserve any such security interest.

In October, 1991, Jack filed for Chapter 7 Bankruptcy. In the Federal Court, by objections filed October 24, 1991, Sherry contested Jack's right to a discharge of his obligation to her to pay the debts assigned to him by the Divorce Decree, and to hold her harmless. However, the Bankruptcy Court held Jack's obligations in that respect were subject to discharge.

Sherry applied for insurance on the home, apparently to protect herself from possible liability on the note and mortgage to Bank.

Allstate issued an insurance policy on the home to Sherry, in her name, on October 26, 1991. The policy covered the usual hazards, including fire, and contained a standard loss payable clause, as its interest appears, to Bank as mortgagee. The policy contained a provision limiting Allstate's liability to Sherry's insurable interest. It is consistent with Oklahoma's statutes, and is as follows:

> ... Allstate ..., to an amount not exceeding the limit of liability specified, does insure the Insured named in the Declarations and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding ..., *nor in any event for more than the interest of the Insured,* .... (emphasis supplied).

On December 1, 1991, the home was destroyed by fire. Allstate furnished Proof of Loss forms to Sherry. About January 20, 1992, she returned the Proof of Loss to Allstate. She claimed a loss for the value of the structure, but not for its contents. Allstate took her sworn examination and also the sworn examination of Jack. For reasons not readily apparent in this appeal, Allstate thought the circumstances of the fire were suspicious and caused an investigation to be made.

On April 2, 1992, Allstate advised Sherry, through her attorney, that it would pay Bank in full for all principal and interest due on its note and mortgage, but would not pay Sherry any additional sum of money because the payment to Bank would satisfy Sherry's insurable interest in full. Bank filed a Proof of Loss about three weeks later, and Allstate paid Bank in full on or about May 4, 1992.

This action was filed on April 10, 1992. Sherry claims she was seeking to force Allstate to pay Bank even though Allstate had advised, in writing, that it would pay Bank. In addition, Sherry prayed for judgment against Allstate for the full amount of stated coverage as set forth in the declarations portion of the policy.

Allstate defended on the ground that Sherry's insurable interest was limited to the amount required to pay the balance due on the note and mortgage to Bank, and the

payment to Bank satisfied its liability in full. Sherry contended she had the right to collect the balance of the policy because Jack's discharge in bankruptcy and his failure to hold her harmless on various debts (as listed in the Divorce Decree) caused her to be required to expend several thousand dollars in paying debts that Jack had been ordered to pay. She also contends Bank owes her attorney fees because she forced Allstate to pay it the balance due on the note and mortgage.

 First, we consider Sherry's contention that the trial court erred in denying her application to require Bank to pay her a fee and attorney fees. Even though the Supreme Court denied the motion to dismiss appeal under § 1006, we are unable to ascertain from the record before us that the trial court has made a final adjudication of all issues asserted by or against Bank, unless the order denying attorney fees is such a judgment. It certainly is not apparent that Sherry was a prevailing party. Her contention that she was required to force Allstate to pay Bank is not borne out by the facts of the case. It appears that the filing of this action was a reaction to Allstate's written notice that it would pay Bank but not Sherry. Be that as it may, generally, unless *required* by law, in cases where attorney fees may be allowed, a trial court has broad discretion. Sherry has not sustained her burden of showing this Court that the demanded fees are required by law, authorized by law, or that the trial court abused its discretion in denying her application. Insofar as this issue is before this Court for decision, the order of the trial court is affirmed.

 Next, Sherry contends the Court erred in holding her insurable interest in the home was limited to the amount due Bank on its note and mortgage. In effect, she contends Jack's failure to pay various debts, as ordered by the divorce court, gave her a security interest in the home. Applicable authority to support this contention has not been cited. In making her argument in support of her contentions, the holding of the Bankruptcy Court that Jack's obligation to her was dischargeable is not considered. If Jack received a discharge in bankruptcy, he would have no obligation to Sherry to pay

debts. At the time of the hearing, in this case, the automatic stay, under bankruptcy laws, was in effect.

Sherry contends she executed and delivered a quit claim deed to Jack, which put the title to the home in his name, with the oral understanding that he would sell the home and pay their joint debts. This contention ignores the provision in the Divorce Decree ordering her to execute and deliver the deed, the provision in the Decree that it would constitute such a conveyance if she failed to do so, and the provision in the decree restraining her from claiming any interest in the home. In addition, the deed does not contain any reservation of any security interest. In addition, this contention does not consider the effect of 16 O.S.1991 § 4 which requires a deed, mortgage, or conveyance of real estate or any interest in real estate [with exceptions not material here] to be in writing and subscribed by the grantors.

 Sherry contends Allstate is estopped from denying her payment of the full proceeds of the insurance policy (less the amount paid to Bank). Before estoppel may apply, the insurance policy must constitute a lawful contract. Contracts of insurance are valid and enforceable insofar as authorized by statute. Such contracts, not authorized by statute, have generally been held illegal and not enforceable because of public policy considerations and laws prohibiting gambling. Oklahoma statutes, as a prerequisite to validity of an insurance contract, require the beneficiary to have an insurable interest.

As pointed out in Allstate's brief, 36 O.S. 1991 § 3605 provides:

A. No insurance contract on property or of any interest therein or arising therefrom shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured.

B. "Insurable interest" as used in this section means any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment.

C. The measure of an insurable interest in property is the extent to which the insured might be damnified by loss, injury, or impairment thereof.

In *Snethen v. Oklahoma State Union of the Farmers Educational And Co-operative Union of America*, 664 P.2d 377 (Okl.1983), the Court considered § 3605, and discussed the requirement of an "insurable interest". The Court said:

It is well settled that both the validity and enforceability of an insurance contract depend upon the presence of insurable interest in the person who purchased the policy. Considerations underlying the insurable interest concept are generally articulated in terms of policy (1) against allowing wagering contracts under the guise of insurance, (2) against fostering temptation to destroy the insured property in an effort to profit from it and (3) favoring limitation upon the sweep of indemnity contracts.

 \* \* \* \* \* \*

While American jurisdictions generally agree with the public policy considerations that underly (sic) the necessity for an insurable interest, they stand divided on what constitutes an insurable interest. Two basic theories were evolved for measuring the nexus which must be present between the property and its insured for an insurable interest to attach. The literature refers to one of these as the "legal interest" and to the other as the "factual expectation" theory.

The *Snethen* Court expressed a preference for the "factual expectation" test, and said:

Under this theory there is an insurable interest in the property if the insured would gain some economic advantage by its continued existence or would suffer some economic detriment in case of its loss or destruction.

 \* \* \* \* \* \*

For the purpose of determining an insurable interest under § 3605, it is necessary to make a distinction between "legal" and "lawful" interests. A substantial economic interest is insurable if it is "lawful" in the sense that it was not acquired in violation of law. As used in § 3605(B), the word "lawful" is not synonymous with "legal". A legal interest is enforceable against the whole world. A good-faith purchaser for value acquires an interest that is lawful and enforceable against all the world but the legal owner. Although it is only a qualified possessory interest, it is lawful and enforceable to a very large extent. Section 3605 allows *any lawful interest* to be insurable if the economic interest is substantial.

Sherry had no title, ownership, insurable interest, or other interest in the real property (the home) involved here. She had no factual expectation of an actual, lawful, substantial economic interest in Jack's general assets from which she would ever be satisfied.

The trial court correctly held that Sherry's "insurable interest" in the home was limited to the amount due to Bank on its note and mortgage. It becomes unnecessary to discuss other issues presented by the parties.

AFFIRMED.

HUNTER, P.J., and BAILEY, J., concur.