In The Matter of The ESTATE OF Otis H. EVERSOLE, Deceased.

Otis EVERSOLE, Jr., Anthony Eversole, and Mark Eversole, Appellants,

v.

Bill R. SCARTH, Executor of the Estate of Otis H. Eversole, Appellee.

No. 77254.

Supreme Court of Oklahoma.

Oct. 25, 1994.

---

Ken Ray Underwood, Tulsa, for appellants.

Bill R. Scarth, Bassman, Mayberry, Scarth & Rahmeier, Claremore, for appellee.

OPALA, Justice.

The issues presented on certiorari are (1) Is the district court's decision that Otis H. Eversole [deceased, testator or Eversole] *intended* his estate's contribution to his wife's marital deduction trust be in the *maximum* amount allowed under the Internal Revenue Code [1] [I.R.C.] *at the time of his death* clearly contrary to the weight of the evidence? (2) Are Otis Eversole, Jr., Anthony Eversole, and Mark Eversole [appellants or sons] pretermitted heirs of Otis H. Eversole? We answer both questions in the negative.

## I

### THE ANATOMY OF LITIGATION

Eversole's will was executed on November 8, 1974. He died on August 21, 1983 without ever modifying or revoking this instrument. Its provisions create a marital deduction trust, naming Eversole's widow as the primary beneficiary and the deceased's sons and stepson as contingent beneficiaries.[2] Under the will the estate's contribution to the trust

---

1. 26 U.S.C. §§ 1 et seq.

2. The marital trust provision in Eversole's will is as follows:

    "If my said wife, Maggie Jean Eversole, survives me, then I give, devise and bequeath to my trustee, hereinafter named, as a separate trust, hereinafter sometimes referred to as "My Wife's Trust," so much of my estate as is equal in value to *the maximum marital deduction* allowed with respect to my estate under the provisions of the Internal Revenue Code upon the basis of the value of my adjusted gross estate as finally determined for Federal Income Tax purposes, less the value of any property or interest in property qualifying for said marital deduction which pass or have already passed to my wife under other provisions of this Will, by operation of law, or otherwise." [Emphasis added.]

    The will also provides that his widow is to receive all the marital deduction trust's income during her life and that she can invade the trust's

res in an amount not to exceed $6,000.00 annually. The trustee is given the discretion to invade the trust res to pay for the "proper care, maintenance and support" of Eversole's widow. Lastly, the widow is given a testamentary power of appointment over the marital deduction trust res remaining at her death. If she does not exercise the power of appointment in her will, the unappointed portion of the res is to be distributed as a part of the residuary estate as follows:

| | |
|---|---|
| Otis Eversole, Jr. | ⅛ |
| Anthony Eversole | ⅛ |
| Trust (to be distributed to the beneficiaries on their 32nd birthday) | ⅝ |
| The beneficiaries (and share of residue) are: | |
|    Mark Eversole | ⅛ |
|    Charles Henson, Jr. | ⅛ |
|    Kevin Eversole | ⅜ |

was to equal the "maximum marital deduction" allowed by the I.R.C. Lastly, the instrument named the sons along with Kevin Joe Eversole and Charles William Henson, Jr.[3] as residual beneficiaries of Eversole's estate.

Bill Scarth [executor, Scarth or Eversole's lawyer][4] asserted that the estate's contribution to the marital deduction trust—*i.e., the maximum marital deduction—should include the entire Eversole estate less any specific bequests*.[5] The deceased's sons moved for an interpretation of the will. They sought either (1) to limit the estate's contribution to the marital deduction trust to one-half of the estate's value or (2) to establish their claims to intestate shares of the estate.

When the sons' motion was denied, they appealed. The Court of Appeals, Division III, held Eversole's will *ambiguous* and reversed the district court's decision. It remanded the cause to afford the parties an opportunity to *present extrinsic evidence of the testator's intent at the time of his will's execution*[6] [Eversole I]. On remand Scarth, the executor, testified that Eversole strove to minimize his tax obligations,[7] knew the meaning of the word "maximum" used by him in the will,[8] and had a very close relationship with his then wife.[9] The sons testified that they enjoyed firm ties with their father and that during their lives he had been supportive of them.

During the evidentiary hearing the sons objected to testimony offered by the executor which either (1) related to periods of time *subsequent to the execution of the will* or (2) recounted oral declarations of the deceased about his testamentary intent. The objections were sustained and Scarth in an "offer of proof"[10] recalled conversations he had with the deceased when the *unlimited* marital deduction (of the federal estate tax) was enacted by the federal Economic Recovery Tax Act of 1981[11] [E.R.T.A.].

The district court, by its May 8, 1991

**3.** Kevin Joe Eversole is the only child born of the marriage of Eversole and his surviving spouse, Maggie Jean. Charles William Henson, Jr. is Maggie Jean's son by a previous marriage and the step-son of the deceased. [Neither Kevin nor Charles is a party to this suit.] Otis H. Eversole, Jr. and Anthony Eversole are the deceased's sons by his first marriage; Mark Eversole is his son by the fourth marriage.

**4.** Bill Scarth is not only the lawyer who drafted Eversole's will but also the estate's executor.

**5.** The uncertainty concerning the amount of the estate's "maximum" contribution to the marital deduction trust is caused by 1981 changes in federal estate tax laws.

The federal estate tax law *effective at the time of the Eversole will's execution* [26 U.S.C. § 2056(c)(1) (1954)] stated:

"**Limitations on aggregate of deductions: General Rule.**
The aggregate amount of the deductions allowed under this section (computed without regard to this subsection) shall not exceed 50 percent of the value of the adjusted gross estate, as defined in paragraph (2)."

By the *time of Eversole's death* the federal tax law had been changed. *See* Economic Recovery Tax Act of 1981 [E.R.T.A.], Pub.L. 97–34, 95 Stat. 172, 301, Section 403(e)(3), effective 1981. The 1981 version—codified at 26 U.S.C. § 2056(a)—provides:

"**Allowance of marital deduction.**
For the purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsection (b), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate."

**6.** *Matter of Estate of Eversole*, Okl.App., 787 P.2d 470 (1989).

**7.** Trial Transcript, pp. 155–56.

**8.** Trial Transcript, pp. 155–156. Scarth also testified (1) that Eversole "hated to pay taxes" and (2) that Eversole understood that by using the "maximum marital deduction" language he was building a "sliding" scale into his will, allowing him to obtain the greatest tax benefit available under the law.

**9.** Trial Transcript, p. 153.

**10.** An *offer of proof* allows the defeated lawyer to present what would otherwise be excluded testimony. The device is used to preserve for appellate review the nisi prius ruling on the admissibility of the evidence. KENNETH S. BROUN ET AL., MCCORMICK ON EVIDENCE 195–196 (John W. Strong, et al., eds., 1992).

**11.** Economic Recovery Tax Act, Pub.L. 97–34, 95 Stat. 172, 301 [E.R.T.A.].

order,[12] ruled that Eversole intended for his entire estate—less specific bequests—to be distributed to the marital deduction trust. The sons again appealed and, this time, the Court of Appeals, Division I, held that the trial court did not err in concluding that the deceased intended to make the maximum contribution allowable *at the time of his death* to the marital deduction trust—*i.e., 100% of his estate less specific bequests*. In reaching its decision the Court of Appeals, Division I, held *the deceased's will was unambiguous*. [Eversole II]

## II

## THE STANDARD OF REVIEW

Probate proceedings are of equitable cognizance.[13] While an appellate court will examine and weigh the record proof, it must abide by the law's presumption that the trial court's decision is legally correct [14] and cannot be disturbed unless found to be *clearly contrary to the weight of the evidence* or to some governing principle of chancery practice.[15] If legally correct, the chancellor's de-

cree will not be reversed because of faulty reasoning, an erroneous finding of fact or the consideration of an immaterial issue.[16]

## III

## THE SETTLED–LAW–OF–THE–CASE EFFECT

The settled-law-of-the-case doctrine forbids retrial of any issue previously determined by an appellate opinion that is final in the sense that all proceedings for its review have been exhausted.[17] When in Eversole I *the issue of the will's ambiguity* was first raised, the Court of Appeals held that *the will's language was ambiguous*.[18] On certiorari·before us now the sons maintain that the Court of Appeals in Eversole II did not follow the settled law of Eversole I; we agree. *That the will was ambiguous* became *finally settled* when certiorari in Eversole I was denied on February 21, 1990 and no further proceedings for review were taken. *It was hence impermissible for the Court of Appeals to hold in Eversole II that the will is unambiguous.*

---

**12.** In interpreting his will the court found that Eversole was aware of E.R.T.A., 84 O.S.1991 § 186, and of the legal right at law to revoke a will. *See* the nisi prius order, dated May 8, 1991, ¶ 14. In making this finding the trial court relied upon both (1) a presumption of law that a testator has knowledge of the law in effect at the time of his/her death and (2) information included in Scarth's offer of proof. *Reliance upon the latter was error albeit harmless error.*

**13.** *Matter of Estate of Pope*, Okl., 808 P.2d 640, 646 (1990); *Matter of Estate of Bartlett*, Okl., 680 P.2d 369, 374 (1984).

**14.** *Pope, supra* note 13 at 646; *Carpenter v. Carpenter*, Okl., 645 P.2d 476, 480 (1982).

**15.** *Pope, supra* note 13 at 646; *Matter of Estate of Baxter*, Okl.App., 798 P.2d 644, 646 (1990); *Burdick v. Independent School Dist.*, Okl., 702 P.2d 48, 55 (1985); *Bartlett, supra* note 13 at 374; *Estate of Smith v. Williams*, Okl., 674 P.2d 17, 19 (1983); *Carpenter, supra* note 14 at 480; *Snow v. Winn*, Okl., 607 P.2d 678, 680–681 (1980); *Board of County Commissioners of Marshall Co. v. Snellgrove*, Okl., 428 P.2d 272, 276 (1967); *Wahby v. Renegar*, 199 Okl. 191, 185 P.2d 184, 185 (1947); *Harrison v. Eaves*, 191 Okl. 453, 130

P.2d 841, 844 (1942). Will contests are of equitable cognizance and a lower court's decision will not be disturbed unless it is clearly contrary to the weight of the evidence. *See Matter of Estate of Ausley*, Okl., 818 P.2d 1226, 1229 (1991); *Matter of Estate of Beal*, Okl., 769 P.2d 150, 152 (1989); *In re Estate of Bennight*, Okl., 503 P.2d 203, 204 (1972); *In re Hess' Estate*, Okl., 379 P.2d 851, 857 (1962).

**16.** *Pope, supra* note 13 at 646; *Willis v. Nowata Land and Cattle Co.*, Okl., 789 P.2d 1282, 1286–87 (1990).

**17.** *Handy v. City of Lawton*, Okl., 835 P.2d 870, 873 (1992); *Panama Processes v. Cities Service Company*, Okl., 796 P.2d 276, 283 n. 27 (1990); *Nowata Land, supra* note 16 at 1285 n. 10; *Reeves v. Agee*, Okl., 769 P.2d 745, 756 n. 46 (1989); *Mullins v. Ward*, Okl., 712 P.2d 55, 61 n. 13 (1985); *Timmons v. Royal Globe Insurance Company*, Okl., 713 P.2d 589, 592 n. 7 (1985); *Cavett v. Peterson*, Okl., 688 P.2d 52, 56–57 (1984); *Mobbs v. City of Lehigh*, Okl., 655 P.2d 547, 549 n. 5 (1982); *Matter of Estate of Severns*, Okl., 650 P.2d 854, 856 (1982).

**18.** *Eversole, supra* note 6 at 473.

## IV

## AMBIGUITIES IN A WILL ARE RESOLVED BY DETERMINATION OF THE TESTATOR'S INTENT

### A

### THE AMBIGUITY IN EVERSOLE'S WILL

■ The ambiguity in Eversole's will is not created by the presence of equivocal expressions in the will's text but rather by the existence of facts extraneous to the instrument.[19] Hence, it is a *latent ambiguity, i.e.,* one not arising on the face of the will.[20] Simplified, the issue facing the trial court was "How much of his estate did Otis Eversole Sr. intend to contribute to the marital deduction trust created for his spouse, stepson, and sons?" To determine the testator's intent and answer the query the trier had to resolve the meaning of the phrase "maximum marital deduction allowed ... under the provisions of the Internal Revenue Code" in the context of Eversole's will.[21]

In 1974, when Eversole executed his will, the *maximum marital deduction* allowed under the I.R.C. could not exceed 50% of the value of the adjusted gross estate.[22] E.R.T.A., which amended the I.R.C.,[23] provided for an *unlimited marital estate tax deduction.* Out of concern that the amendment potentially could result in a testator's entire estate passing to a surviving spouse when this was not his/her intent, Congress enacted a transitional rule[24] which, under prescribed circumstances, preserves the pre-E.R.T.A. tax treatment for marital deductions.[25] In response to the transitional rule Oklahoma enacted 84 O.S. § 186 in 1982. Section 186 provides:

"Any will of a decedent dying after December 31, 1981, which contains a marital deduction formula expressly providing that the spouse of the testator is to receive the maximum deduction allowable by federal law shall be construed as referring to the *unlimited marital deduction* provided by the Economic Recovery Tax Act of 1981, Public Law 97–34...."[26]

When Eversole died on August 21, 1983, the *maximum marital deduction* available to his estate under both federal and state law was *no longer limited.*

**19.** *See Eversole, supra* note 6 at 473, where the court held:

"The ambiguity arises from the change in the tax laws since [the] testator made his will."

**20.** A *latent* defect is one which arises from some circumstance or fact which is collateral or extraneous to the will. Where there is no defect on the face of the will itself, but there is uncertainty about its effect, the ambiguity is *latent. See Crump's Estate v. Freeman,* Okl., 614 P.2d 1096, 1098 (1980); *see also* GEORGE W. THOMPSON, THE LAW OF WILLS § 327 at 490 (3d ed. 1962).

**21.** For the relevant text of Eversole's will, see *supra* note 2.

**22.** *See supra* note 5 for the I.R.C. provisions [26 U.S.C. § 2056(c)(1) (1954)] in effect when the will was executed.

**23.** *See supra* note 5 for the amended terms of 26 U.S.C. § 2056(a) (1981).

**24.** *See* E.R.T.A., Pub.L. 97–34, 95 Stat. 172, 301, Section 403(e)(3), which states in pertinent part:

"If—
(A) the decedent dies after December 31, 1981,

(B) by reason of the death of the decedent property passes from the decedent or is acquired from the decedent under a will executed before the date which is 30 days after the date of the enactment of this Act, or a trust created before such date, which contains a formula expressly providing that the spouse is to receive the *maximum amount of property qualifying for the marital deduction allowable by Federal law,*
(C) the formula referred to in subparagraph (B) was not amended to refer specifically to an unlimited marital deduction at any time after the date which is 30 days after the date of enactment of this Act, and before the death of the decedent, and
(D) the *State does not enact a statute* applicable to such estate which construes this type of formula as referring to the marital deduction allowable by Federal law as amended by subsection (a),
then the amendment made by subsection (a) shall not apply to the estate of the decedent."
[Emphasis added.]

**25.** *See Estate of Bruning v. C.I.R.,* 888 F.2d 657, 659 (10th Cir.1989).

**26.** This statute became effective July 14, 1982.

## B

### THE TESTATOR'S INTENT IS DETERMINATIVE OF THE RESOLUTION OF ANY AMBIGUITIES FOUND IN A WILL

██ Once an ambiguity is identified in a will, the trial judge must resolve the uncertainty by determining and giving effect to the testator's intent [27] at the time of the will's execution.[28] *When the ambiguity under the court's scrutiny is latent,* as is the case here, it is permissible to consider *parol* evidence [29] to show the facts and circumstances surrounding the testator and his relationships to those named as beneficiaries.[30] The parol or extrinsic evidence admitted at nisi prius *cannot be used to show what the testator intended to say but rather it must demonstrate what the testator intended by the language used in the will.*[31]

██ At the evidentiary hearing conducted on November 19, 1990 the trial court received extrinsic evidence to resolve the latent ambiguity in Eversole's will. The court *properly excluded* evidence relative to periods of time subsequent to the will's execution.[32]

██ Unless judgments and orders in cases of equitable cognizance *are clearly contrary to the weight of the evidence,* they will not be disturbed because it is possible to draw other conclusions from the evidence adduced.[33] After reviewing the record, we find there is adequate proof supporting the trial court's findings that: (1) Eversole was an intelligent person, a shrewd and knowledgeable businessman, who was completely cognizant of his personal fortune; (2) he understood the meaning of the word "maximum" used by him in the will; (3) he could have used terminology limiting his estate's contribution to the marital deduction trust but did not do so; and (4) by the word "maximum" he sought to secure the greatest tax deduction achievable through his estate's contribution to the marital deduction trust. It is not unreasonable for the trial judge to find that a man of Eversole's means would desire to pass to his surviving family the maximum he can protect from the tax authorities. Since the trial judge's decision is *not clearly contrary to the weight of the properly admitted evidence and is consistent with the text of the will,* it is our duty not to disturb the nisi prius order finding that Eversole intended to make the *maximum marital deduction* allowed under the I.R.C. to his widow's trust, *i.e.,* the deduction available at his death.

## C

### STATUTES ENACTED AFTER A WILL'S EXECUTION, BUT BEFORE THE WILL–MAKER'S DEATH, OPERATE ON THE WILL

██ Statutes enacted after a will's execution, but before the will-maker's death, operate on the will.[34] This construction does not make the statute's application impermissibly

27. The primary purpose in the interpretation of any will is to determine, and give effect to, the testator's intent at the time of the will's execution. *Matter of the Estate of Hixon,* Okl., 715 P.2d 1087, 1089 (1986); *Matter of the Estate of Bovaird,* Okl., 645 P.2d 500, 502 (1982); *Hein v. Hein,* Okl., 431 P.2d 316, 319 (1967); *Arment v. Shriners Crippled Child. Hospitals,* Okl., 298 P.2d 1048, 1052 (1956); *Parnacher v. Hawkins,* 203 Okl. 387, 222 P.2d 362 syl. 1 (1950).

28. *In re Daniel's Estate,* Okl., 401 P.2d 493, 498 (1965).

29. *Matter of the Estate of Flowers,* Okl., 848 P.2d 1146, 1148 (1993); *Crump's Estate, supra* note 20 at 1098.

30. *Matter of Estate of Westfahl,* Okl., 674 P.2d 21, 24 (1984); *Matter of Estate of Zarrow,* Okl., 688 P.2d 47, 49, 51 (1984); *Dannenburg v. Dannenburg,* Okl., 271 P.2d 345, 351 (1954); *Noble v.* *Noble,* 205 Okl. 91, 235 P.2d 670, 673 (1951); *Dilks v. Carson,* 197 Okl. 128, 168 P.2d 1020, 1021–22 (1946).

31. *See Baxter, supra* note 15 at 647; *see also Thompson, supra* note 20 at 490.

32. *See Thompson, supra* note 20 at 497, where he observed:

"Proof of conditions existing or declarations of the testator after the execution of the will are inadmissible as bearing on its construction. The reason for the rule is that the admission of such testimony would permit wills to be made by parol, and would, in effect, repeal the statute requiring them to be written."

33. *See Carpenter, supra* note 14 at 480; *Wahby, supra* note 15, 185 P.2d at 185; *Harrison, supra* note 15, 130 P.2d at 843.

34. *Hein, supra* note 27 at 319; *Daniel's Estate, supra* note 28 at 498.

retrospective *since it affects no vested rights.*[35] When, as here, it has been determined that the testator intended to give the *maximum* marital deduction allowed under federal estate tax law to the trust set up for his widow and children, and that the congressional definition of "maximum" changed after the will's execution, there is no legal impediment to allowing the estate the enhanced deduction available at the testator's death. Application of the law in this manner is compatible with the court's determination of Eversole's testamentary intent.

## VI

### BY MAKING CONDITIONAL BEQUESTS TO HIS SONS EVERSOLE DID NOT OMIT TO PROVIDE FOR HIS CHILDREN

■ Before a statutory share of inheritance to a child or to the issue of a

testator's deceased child may be "legally extinguished,"[36] an intent to disinherit stated in "strong and convincing" language must be found within the four corners of the will.[37] *Eversole's will provided for his sons and stepson* in two separate provisions—not only as the residual beneficiaries of the estate but also of the marital deduction trust.[38] While the sons may be disappointed with the quantum of their father's bequest to them, his will undeniably mentions and provides for them.

■ When an ancestor makes a *conditional testamentary bequest* to beneficiaries who were not otherwise provided for, the will is deemed to address the potential pretermission and the statute [84 O.S.1991 § 132] will not apply.[39] This principle is consistent with our statutory regime of pretermission.

---

**35.** *Frost v. Davis*, 182 Okl. 593, 79 P.2d 600, 602–03 (1938); *Wilson v. Greer*, 50 Okl. 387, 151 P. 629 syl. 1 (1915).

**36.** *See* 84 O.S.1991 § 132. Its pertinent terms are:

"When any testator omits to provide in his will for any of his children, or for the issue of any deceased child unless it appears that such omission was intentional, such child, or the issue of such child, must have the same share in the estate of the testator, as if he had died intestate, and succeeds thereto as provided in the preceding section." [The issue of afterborn children not provided for in a will is addressed in 84 O.S.1991 § 131].

*See also In re Revard's Estate*, 178 Okl. 524, 63 P.2d 973, 975 (1936). Whether the omission was *unintentional* is not critical in a pretermission inquiry. What is crucial is whether the face of the will shows an intent to disinherit. *See Matter of Estate of Woodward*, Okl., 807 P.2d 262, 264 (1991); *Crump's Estate, supra* note 20 at 1099; *Matter of Estate of Severns, supra* note 17 at 857.

**37.** *Flowers, supra* note 29 at 1152; *Crump's Estate, supra* note 20 at 1097; *Matter of Estate of Hester*, Okl., 671 P.2d 54, 54–55 (1983); *Matter of Estate of Severns, supra* note 17 at 857; *Monroe v. Lawrence*, Okl., 347 P.2d 1016, 1019 (1959); *In re Castle's Estate*, Okl., 262 P.2d 704, 706 (1953); *Dilks, supra* note 30, 168 P.2d at 1021–1022; *In re Revard's Estate, supra* note 36 63 P.2d at 975; *Spaniard v. Tantom*, 131 Okl. 75, 267 P. 623, 625 (1928). *See also Pease v. Whit-*

*latch*, Okl., 397 P.2d 894, 895 (1964) (the testatrix' intention to omit a grandchild from taking under the will is apparent from the four corners of the document when the testatrix mentioned the grandchild as a member of her family but did not otherwise provide for the grandchild.).

**38.** *See supra* note 2 for the marital deduction trust's provisions for the sons.

**39.** WILLIAM M. MCGOVERN, JR ET AL., WILLS, TRUSTS AND ESTATES 110 (1988); THOMAS E. ATKINSON, ATKINSON ON WILLS 142 (2d ed. 1953). *See Leatherwood v. Meisch*, 297 Ark. 91, 759 S.W.2d 559 (1988) (daughter was included in the class, "heirs at law", named in the will as beneficiaries if the wife does not survive the testator. This is sufficient mention of the daughter to show that she was not a pretermitted heir); *Dykes v. Dykes*, 294 Ark. 158, 741 S.W.2d 256 (1987) (pretermitted heir statute does not allow children to take an intestate share just because they were not provided for under the will; if the testator mentioned his children, then the statute does not apply and the children are not pretermitted); *Willoner v. Davis*, 30 Md.App., 353 A.2d 267 (1976), *aff'd, Davis v. Davis*, 278 Md. 534, 365 A.2d 1004 (1976) (in *Willoner*, the will was written before the adoption of a child but mentions the future child in a contingent bequest. The court held that the will shows that the testator did not omit the child through negligence or carelessness.); *In re Estate of Markowitz*, 126 N.J.Super. 140, 312 A.2d 901 (1973) [the will of the testator reflected an intent to omit children (adopted after the making of the will) by saying "my children, me surviving". This provision of the will demonstrated that the testator had not care-

When a person names his/her children as residual beneficiaries of a trust encompassing his/her estate's entire assets and the surviving spouse is given a general testamentary power of appointment over the trust *res*, the potentially complete and total disposition of the estate is not the legal equivalent of an omission to provide for the children.[40] In short, since Eversole clearly provided for his sons in his will—albeit as contingent beneficiaries—they are not pretermitted heirs.

## VII

### SUMMARY

Because the trial court's ruling—that the Eversole estate's contribution to the marital deduction trust encompass all of its assets [less specific bequests]—*is not clearly contrary to the weight of proof,* the trial court's decision may not be disturbed. The will's language clearly reveals that Eversole provided for each of his sons although perhaps not in the manner they might have hoped. Even though the bequests to his children were contingent, they were not pretermitted within the meaning of 84 O.S.1991 § 132. On certiorari previously granted,

**THE COURT OF APPEALS' OPINION IS VACATED AND THE DISTRICT COURT'S PROBATE ORDER AFFIRMED.**

HODGES, C.J., LAVENDER, V.C.J., and SIMMS, HARGRAVE, OPALA, ALMA WILSON and WATT, JJ., concur.

KAUGER, J., concurs in part and dissents in part.

---

lessly neglected to include the after-adopted children.]; and *McLean v. McLean,* 207 N.Y. 365, 101 N.E. 178 (1913) (the testator in his will made a contingent bequest to "children" if he did not survive the testatrix. A child was born after the execution of the will (afterborn child) and was held to be a member of the class. There, the contingent bequest to testator's "children" was deemed a sufficient mention of the afterborn child to prevent him from being pretermitted.).

40. *Flowers, supra* note 29 at 1152; *Woodward, supra* note 36 at 264; *Matter of Estate of Gooldy,* Okl.App., 815 P.2d 1213, 1214 (1991); *Severns, supra* note 17 at 857; *Crump's Estate, supra* note 20 at 1099.