2001 OK CIV APP 109

**In the Matter of the ESTATE OF Zelma A. ROSE, Deceased.**

**Jimmy E. Rose, Appellant,**

v.

**Robert H. Rose, Appellee.**

**No. 95,412.**

Court of Civil Appeals of Oklahoma, Division No. 3.

July 13, 2001.

Charles M. Laster, Shawnee, OK, for Appellant.

Marianne Miller, Parsons Law Firm, Shawnee, OK, for Appellee.

HANSEN, Chief Judge:

¶ 1 Appellant, Jimmy Rose, seeks review of the trial court's order approving the final account of the estate of Rose's deceased mother, Zelma Rose, directing distribution, denying Rose's motion to remove Appellee, Robert Rose, as personal representative, and assessing attorney fees and costs against Jimmy Rose. At issue is whether certain assets Zelma held in joint tenancy with Robert were part of the probate estate. We reverse because the order is contrary to law and is against the clear weight of the evidence.

¶ 2 Zelma Rose owned a one-third share in a nursing home in Shawnee, Oklahoma. In 1990, she executed a will providing her interest in the nursing home as well as her other assets would be split equally upon her death between her two surviving sons, Robert and Jimmy. In 1993, she changed the will to give all her interest in the nursing home to Robert, while still dividing the remainder of the property equally between her sons. The will nominated Robert to act as personal representative. When Zelma died in 1999, Robert presented the 1993 will for probate and petitioned to be appointed personal representative. Jimmy objected to both the admission of the will and Robert's appointment as per-

sonal representative. He contested the validity of the will, asserting Zelma executed it under Robert's undue influence. The trial court found no undue influence and admitted the will to probate. The Court of Civil Appeals affirmed the trial court's order in Case No. 93,334.

¶3 At the will contest hearing, Robert testified under direct examination by his own lawyer:

Q   What about your mother's liquid assets, as far as cash in the bank and CDs, and things of that nature? In '90 and '93, were they about the same?

A   Yes.

Q   Okay. And it's your understanding that it's to be split 50–50; is that correct?

A   Yes.

Q   In both wills?

A   Yes.

Q   Okay. The only exception is your mother devising you in '93 the stock in [the nursing home] that had very little value at the time.

A.   Yes.

Later in the hearing, under cross-examination by his own lawyer during Jimmy's case-in-chief as contestant, Robert testified as follows:

Q   You testified that there are several accounts-and I think the exhibits that have been admitted by stipulation of the parties with respect to the bank accounts that were held both in your mother and your name jointly, some were payable on death and some were CD's; is that correct?

A   Yes.

Q   And I believe your testimony was that your understanding is that money is both-should be divided equally between the two of you?

A   Yes.

Q   Regardless of how it was held?

A   Yes.

Q   Was that your mother's intentions?

A   Yes.

Q   She never understood that "payable on death", did she?

A   She never understood it until it was explained to her in detail.

Q   And did she ever understand a joint tenant account bank account?

A   No.

Q   So however it was held, if it was you or with Jimmy, she never understood that it would go to one or the other legally?

A   No. She never intended that way.

¶4 In demurring to the contestant's evidence, Robert's lawyer argued Jimmy would get his half of the estate even though the money was in Robert's name. She also argued, "The car, the car is Ms. Rose's car. It's going into the estate. I don't even understand why that's an issue."

¶5 After Robert was appointed personal representative, he filed an inventory and appraisement on August 12, 1999, under oath, showing estate assets with a total appraised value of $629,893.00. The inventory included 33 ⅓ shares of stock in the nursing home valued at $266,666.66, a 1992 Toyota Camry valued at $5,000.00, two certificates of deposit valued at $31,057.86 and $18,772.62 respectively, three certificates of deposit held in joint tenancy with Robert Rose valued at $108,418.17, $60,000.00, and $37,168.24 respectively, a checking account held in joint tenancy with Robert Rose valued at $62,320.67, and a savings account valued at $34,792.07. The inventory also listed Zelma's one-third share in three accounts of the nursing home, valued at $11.09, $1,523.92, and $4,161.70 respectively. Jimmy objected to the inventory, but never sought a hearing on his objection.

¶6 On September 23, 1999, Robert moved for partial distribution, seeking to have the shares of stock in the nursing home distributed to himself. The trial court granted the motion over Jimmy's objection. On June 28, 2000, Robert filed a release from the Oklahoma Tax Commission, showing he had paid $13,583.00 in estate taxes.

¶7 On August 1, 2000, he filed a "Final Account and Petition for Order Allowing Final Account, Determination of Heirship and Distribution of Assets." The final account stated, "[t]hat attached hereto and marked Exhibit "A" is a full and correct statement of

all assets, money and properties remaining in the hands of said Personal Representative for distribution pursuant to the terms of the Will." It alleged Robert Rose's interest under the will was "[a]ll right and interest in her shares in [the nursing home] and ½ interest of the residue of the Estate as shown on Exhibit 'A'" and Jimmy Rose's interest was "[a]n undivided ½ interest of the residue of the Estate as shown on Exhibit 'A'." Exhibit A in its entirety listed only an "Estate Checking Account at BancFirst to be disbursed to Robert H. Rose, deposits from [the nursing home] Shares," valued at $63,684.21.

¶ 8 Jimmy objected to the final account and moved to remove Robert as the estate's personal representative. He asserted Robert failed to account for all the estate assets which were listed on the inventory and had created a conflict of interest that required he be removed as personal representative. Jimmy also moved for a continuance and to compel Stillwater National Bank to turn over bank records of accounts held by Zelma Rose and Robert Rose as joint tenants. Robert filed a response taking the position the bank accounts held in joint tenancy were not assets of the estate. He attached to the response copies of the Stillwater National Bank records which were responsive to Jimmy's subpoena to the bank.

¶ 9 The bank's attorney appeared at hearing on August 28, 2000. Robert's attorney announced Robert consented to the release of the bank records, but the bank's attorney said she had never received a release from Robert Rose consenting in his individual capacity. After the parties agreed to release of the records, the bank's attorney asked for attorney fees, asserting Jimmy failed to follow proper procedure for obtaining the records. The trial court told her to file a motion.

¶ 10 In support of his petition for final account, Robert testified he had paid funeral expenses, prescription bills, expenses for the treatment of his mother's last illness, and the fees of the estate's attorney and accountant. He said he had filed federal and state tax returns and paid the taxes due. Robert testified the $63,684.21 reflected in Exhibit A to the final account was his mother's one-third

share of the receipts from the lease of the nursing home. When his lawyer asked him whether the will provided for him to receive all of his mother's stock and the proceeds, he answered, "Yes." Robert testified the remainder of the items on the inventory were joint accounts.

¶ 11 Under cross-examination, Robert testified he did not include the certificates of deposit in the final account because "I went on the—by the accountant, Trenary & Company, and my attorney.... This was-This was prepared by them." He then testified as follows:

Q   In June of 1999, you told this Court that the certificates of deposit that your mother owned during her lifetime were a part of the estate, didn't you?

A   Yes.

Q   And in August of 1999, when you filed your inventory, you stated to the Court again that those were items that were a part of the estate, correct?

A   Correct.

Q   And in November of 1999, when I took your deposition, you again told me that those accounts were a part of the estate, correct?

A   Correct.

. . .

Q   Have you changed your mind?

A   Have I changed my mind?

Q   Yes.

A   No.

Q   All right.  So you still believe those certificates of deposit are a part of the estate.

A   They're a part of the inventory and the estate.

¶ 12 Robert testified his name was on the title of the '92 Toyota Camry, and he had sold it to his girlfriend without obtaining the Court's approval. On redirect examination, Robert said the Tax Commission had identified another account he had not previously known about. He testified his mother put the money in joint tenancy with him because Jimmy had taken all the money out of the checking account. He said his mother never

told him to give half the money in his name to Jimmy.

¶ 13 Jimmy testified he agreed with his brother's testimony that his mother's intent was that the money in the joint tenancy accounts be divided between him and his brother. He testified his mother held another certificate of deposit in joint tenancy with him, valued at approximately $18,000.00.

¶ 14 On September 26, 2000, the trial court entered its order approving the final account and denying Jimmy's motions to compel, for continuance, and to remove the personal representative. The order stated the trial court had "examine[d] the Final Account ...," showing all receipts and disbursements to that date, and also, proceeded to examine the vouchers produced ... in support thereof." It found the personal representative "has well and truly accounted for every part of the Estate." The trial court ordered "that costs and attorney fees for defending against these Motions to Compel and Remove the Personal Representative and Objection to the Final Accounting are hereby assessed against JIMMY E. ROSE," and directed the estate be distributed "in accordance with the Will of ZELMA A. ROSE, Deceased, as set forth in the Final Account."

¶ 15 Jimmy appeals from this order with four contentions of error. In his petition in error and brief in chief, Jimmy set forth a fifth contention that the trial exceeded its jurisdiction in constructively determining the joint tenancy accounts were not part of the estate, but he later filed a correction brief withdrawing that contention based on the 1997 amendment to 58 O.S.Supp.1997 § 1(C), which granted the district court "unlimited concurrent jurisdiction" to decide title issues in probate cases.

I

¶ 16 Jimmy's first contention of error is the trial court erred in approving the final account and in failing to distribute the estate according to the will and the testator's intentions. He argues the trial court's deter-mination that title to all the joint tenancy accounts was in Robert Rose was against the clear weight of the evidence and an abuse of discretion.[1] Determination of title is not a discretionary matter. Rather, the trial court's job is to determine in whom the title is vested and whether the property is subject to the jurisdiction of the court in the decedent's estate. 58 O.S.Supp.1997 § 1(C). In reviewing the trial court's determination, we will examine and weigh the evidence, but will not disturb the trial court's order unless it is contrary to law or the clear weight of the evidence. *In re Estate of Eversole,* 1994 OK 114, 885 P.2d 657, 661.

¶ 17 In *Branham v. Smith,* 1992 OK CIV APP 141, 852 P.2d 761, 763, the Court discussed the circumstances under which a surviving joint tenant does not acquire the beneficial interest in property:

¶ 18 Although a joint tenant presumptively is entitled to the whole of the assets upon becoming the survivor, where, as here, all the assets were contributed by the deceased joint tenant, the presumption may be rebutted by showing there was no valid inter vivos gift, the donor did not part with dominion over the property during her lifetime, and the survivor holds the property in trust. *Flesher v. Flesher,* 258 P.2d 899 (Okla.1953).

A resulting trust arises when the legal estate to property is acquired without fraud or violation of a fiduciary duty, and an intent appears by the terms of the disposition or may be inferred from accompanying facts and circumstances that the beneficial interest is not to go or to be enjoyed with the legal title.

Here, the presumption Robert is entitled to the whole of the assets held in joint tenancy with his mother is rebutted by the clear weight of the evidence, including Robert's own statements given under oath on four separate occasions. By Robert's own testimony, his mother did not put the money in joint tenancy with the intent of making a gift

---

1. Jimmy also argues the trial court should have applied judicial estoppel and quasi-estoppel to prevent Robert from manipulating the court with inconsistent positions. Because we conclude the trial court's ruling is against the clear weight of the evidence, we need not reach the estoppel issues.

to Robert. Rather, Zelma maintained dominion over the property during her lifetime, and placed it in joint tenancy with her son with the intent that it be held in trust for the purpose of dividing pursuant to her will. Therefore, the trial court erred in treating title to the joint tenancy property as vested in Robert.

## II

¶ 19 Jimmy's next contention of error is the trial court abused its discretion in failing to require the personal representative to account for all assets of the estate. Requiring an accounting is not a discretionary matter. Jimmy cites case law holding the trial court abuses its discretion in approving a final account when a prima facie showing is made that a certain fund is an asset of the estate but has not been accounted for. *In re Kelly's Estate*, 1928 OK 459, 269 P. 282. That case, and others like it, arose before the 1997 amendment to 58 O.S.Supp.1997 § 1(C) granting concurrent jurisdiction to decide title issues in probate cases. Before that amendment, the trial court had to decide, as a procedural matter, how to handle the title dispute and whether to delay administration of the estate until the dispute was resolved. While the trial court has discretion in decisions governing procedural matters, it must follow the probate statutes. It does not have the discretion to decide whether or not to follow the statutes.

¶ 20 Pursuant to 58 O.S.1991 § 522, Robert, as personal representative, "is chargeable in his account with the whole of the estate of the decedent which may come into his possession, at the value of the appraisement contained in the inventory, ... and with all the interest, profit and income of such estate." Unless an accounting is "waived in writing by all persons entitled to distribution," the personal representative "must render, for the information of the court, an exhibit under oath, showing the amount of money received and expended by him, the amount of all claims presented against the estate and the names of the claimants, and all other matters necessary to show the condition of its affairs." 58 O.S. 1991 § 541.

¶ 21 Here, the trial court wholly failed to require the personal representative to account for all the property of the estate, including its income. The trial court signed an order stating it had "examine[d] the Final Account ..., showing all receipts and disbursements to that date, and also, proceeded to examine the vouchers produced ... in support thereof." However, the final account filed of record does not show receipts and disbursements, and no vouchers were ever filed of record or offered into evidence. Exhibit "A" to the final account lists only an account purporting to be deposits from the nursing home shares. It does not identify whether these deposits were earned before or after the shares were distributed to Robert. If they were earned before distribution, they are income of the estate and distributable under the will.[2] 58 O.S.1991 § 290, and *Globe Indemnity Co. v. Bruce*, 81 F.2d 143, 152 (10th Cir.1935) (applying § 290). The inventory Robert filed under oath listed estate assets totaling $629,983.00. The trial court previously approved distribution of the nursing home shares. The bank accounts of the nursing home, a corporation, were not properly part of the estate of a shareholder. The trial court must hold Robert chargeable with the remaining assets, valued in the appraisement at $357,529.63,[3] along with all interest, profit, and income of the estate. 58 O.S.1991 § 522. The trial court erred as a matter of law in failing to do so.

## III

¶ 22 Jimmy's third contention of error is the trial court abused its discretion in not removing Robert Rose as personal representative. We agree. The record clearly establishes Robert is subject to a conflict of interest which substantially impairs his ability to perform his duties as required by law. Therefore the trial court must suspend his powers as to the subject matter of the con-

---

2. Although Robert testified the will provides for him to receive "the proceeds" of the stock, the will itself does not so state.

3. 629,893.00 − ($266,666.66 + $11.09 + $1,523.92 + $4,161.70) = $357,529.63

flict, which under the facts in this case is (1) all the property of the estate as listed on the inventory, except the nursing home shares and corporate bank accounts, and (2) the after-discovered certificates of deposit held in joint tenancy with either son. 58 O.S.1991 § 234(B). The trial court's failure to suspend Robert's powers as to the property of the estate was a clearly erroneous conclusion and judgment, against reason and evidence. *Abel v. Tisdale,* 1980 OK 161, 619 P.2d 608, 612.

## IV

¶ 23 Jimmy's last contention is the trial court erred in assessing attorney fees and costs against him and in favor of Robert and Stillwater National Bank. Robert argues "the order awarding said attorneys fee has not been filed and is not an appealable order." However, the trial court's order of September 26, 2000 rules on the attorney fee issue, stating, "costs and attorney fees for defending against these Motions to Compel and Remove the Personal Representative and Objection to the Final Accounting are hereby assessed against JIMMY E. ROSE." Any order in a probate case is appealable if it affects a substantial right. 58 O.S.1991 § 721(10). Although the order of September 26, 2000, does not set the amount of fees and costs to be awarded against Jimmy, it finally determines the issue of whether fees and costs are awarded against him. Therefore the order affects a substantial right and is appealable.[4]

¶ 24 Robert does not identify any authority for a cost and attorney fee award in his favor. Instead, he abandons any claim to attorney fees, stating in his answer brief, "The order of the trial court awarding attorney fees against the appellant and in favor of a non-party, Stillwater National Bank, was

for sanctions regarding discovery violations, **not for** filing a motion for continuance or application to remove the personal representative." Therefore, to the extent the order of September 26, 2000 awards fees and costs against Jimmy in favor of Robert, it is reversed.

¶ 25 For the foregoing reasons, the trial court's order approving the final account, directing distribution, denying Jimmy's motion to remove Robert as personal representative, and assessing attorney fees and costs against Jimmy in favor of Robert, it is RE-VERSED. This matter is REMANDED for administration of Zelma Rose's estate in compliance with this opinion. The trial court is instructed to treat all assets Zelma held in joint tenancy with either son as assets of the estate and to hold Robert Rose chargeable for the whole of the estate coming into his possession at the value of the appraisement in the inventory and with all interest, profits, and income therefrom. The trial court is instructed to suspend Robert's powers as to the property of the estate and to appoint a special administrator to recover the property of the estate, file a final accounting, and distribute the residue of the estate in equal shares to Robert and Jimmy, in accordance with the will.

¶ 26 REVERSED AND REMANDED WITH INSTRUCTIONS.

¶ 27 BUETTNER, P.J., concurs; GARRETT, J., dissents.

---

4. We make no decision as to whether the award in favor of Stillwater National Bank is a final, appealable order under § 721(10). Jimmy neither named Stillwater National Bank as an appellee in this case, nor did he serve the bank with

the petition in error. Therefore, we may grant no corrective relief against Stillwater National Bank. *Tinker Inv. & Mortg. Corp. v. City of Midwest City,* 1994 OK 41, 873 P.2d 1029, 1036–1037.