**Frank CHERRY, Plaintiff in Error,**

v.

**Emma CHERRY, Defendant in Error.**

No. 37849.

Supreme Court of Oklahoma.

May 19, 1959.

Rehearing Denied Sept. 15, 1959.

George W. Oliphant, J. C. Daugherty, Hugh M. Sandlin, Holdenville, for plaintiff in error.

Allen G. Nichols, Walter Billingsley, Wewoka, for defendant in error.

HALLEY, Justice.

This action was filed in the District Court of Hughes County by Frank Cherry against the Springfield Fire and Marine Insurance Company to recover $1,000 on a fire insurance policy issued on his home, which was destroyed by fire. By agreement between the plaintiff and the intervenor, Emma Cherry, the in-

surance company paid the amount of the policy into court and was permitted to withdraw from the case.

Emma Cherry and Sam Cherry filed a plea of intervention, but Sam Cherry did not join in the amended plea of intervention, leaving Emma Cherry as the intervenor and Frank Cherry as the plaintiff, and they will be so referred to in this opinion. The trial resulted in a verdict and judgment in favor of the intervenor, and the plaintiff, Frank Cherry, has appealed.

The house insured by Frank Cherry which was destroyed by fire was located on Lot 1, Block 63 of Holdenville, Oklahoma, and was owned by Mary A. Frazier, the mother of Frank, Walter and Sam Cherry. She was the grandmother of Emma Cherry, a daughter of Walter Cherry. Mary A. Frazier died intestate March 27, 1945. Another deceased son, John Cherry, had left three children.

The property involved was purchased by Mary A. Frazier prior to 1930. In 1936 she had become very old and nearly blind, and had moved to the home of her son Walter Cherry. Frank Cherry moved into her old home in 1936. He paid no rent but took care of the house.

In 1941 Mary A. Frazier wanted to sell the property, and in September, 1941, agreed to sell to her son, Frank Cherry, for $400. As part payment of the consideration he delivered a cow and calf and some fence posts at an agreed price of $117. Intervenor alleged that he agreed to keep the home insured prior to his agreement to purchase it in 1941. The record shows that Emma Cherry paid some of the back taxes. The abstract was brought to date and delivered to Frank Cherry, certified to September 19, 1941, and he paid the costs on an agreement that the sum so paid would be credited on the balance due by him on the purchase price. He was to receive a deed from his mother, but such deed was never delivered. The reason for failure to give him a deed from his mother according to their agreement is not clear. Emma Cherry testified that the reason he was never given a deed was due to his failure to pay the balance of the consideration agreed upon, while he testified that he would have paid the balance due upon the delivery of a deed.

However, after the house was burned on December 13, 1948, and three years after the death of his mother, Walter Cherry filed for record on December 18, 1948, a warranty deed from Mary A. Frazier, dated September 19, 1941, conveying the property to himself. February 7, 1949, Walter Cherry made a quitclaim deed conveying the property to Emma Cherry, intervenor herein, and there is no privity shown between her asserted interest and that of the plaintiff.

The oral agreement of Frank Cherry with his mother in 1941 is not denied. He has ever since been in continuous possession of the property under such oral contract. The deed was never delivered but the abstract and the expense thereof was paid by Frank Cherry, for which he was to receive credit on the agreed purchase price. He repaired the house at a cost of $600, and bought and paid for a fire insurance policy in 1948, payable to himself for $1,000, and while this policy was in effect the house burned.

The evidence showed that in 1945 Walter Cherry filed in the District Court of Hughes County a trespass to try title suit against Frank Cherry and wife, based upon Frank's possession and the then unrecorded warranty deed from Mary A. Frazier to Walter Cherry. We will not discuss this matter because it is not a proper part of this case but must be disposed of in the suit to try title.

Emma Cherry, intervenor in the present action, set up the deed from Mary A. Frazier to Walter Cherry in 1941, recorded December 18, 1948, and the quitclaim deed from him to her dated February 7, 1949, and alleged that she was the

owner of the property through these two deeds, and that when the house was burned Walter Cherry was the owner of the insured property, and that Frank Cherry agreed again after the death of his mother to pay the taxes and insurance in lieu of paying rent, and in fact was acting as trustee for intervenor and her father, Walter Cherry. She prayed for "her share" of the proceeds of the insurance policy.

Frank Cherry denied that he had made any such agreement after he agreed to buy the property from his mother. There is no evidence that intervenor, Emma Cherry, had any interest in the property at the time it was destroyed by fire. Her only claim to an interest in the property is the quitclaim deed from Walter Cherry on February 7, 1949, months after the house had burned on December 13, 1948. Proceeds of an insurance policy could not be transferred by quitclaim deed after the property insured had ceased to exist.

Plaintiff moved for a directed verdict at the close of the evidence, which was denied. Plaintiff's motion for a new trial was based partly upon error of the court in refusing plaintiff a directed verdict and in refusing instructions requested by the plaintiff. We will only discuss the error in refusing to direct a verdict. Plaintiff submitted in support of this the following:

"In the absence of an agreement to provide insurance, there is no obligation as between mortgagor and mortgagee, vendor and vendee, lessor or lessee, to procure insurance for the benefit of the other, insuring against fire or other risks, and neither ordinarily has an interest in proceeds of the insurance obtained by the other on his own separate insurable interest."

It should be kept in mind that the real issue here is whether the plaintiff or the intervenor is entitled to the $1,000 proceeds from the insurance on the building destroyed by fire. At the time of the fire plaintiff was in full possession of the property and had secured and paid for the policy of insurance. The intervenor obtained a quitclaim deed from her father, Walter Cherry, after the fire, and claimed title to the property and asserted her right to the insurance money under the deed from her father. Under intervenor's theory her right to the insurance money is based upon the right of her father thereto under his deed from his mother in 1941, not recorded until December 18, 1948, after the fire on December 13, 1948.

Plaintiff further contends that after he obtained from his mother an oral contract to buy the land, he made payment of part of the consideration, and continued in full possession. There is no evidence or testimony that he was under a contractual duty to provide insurance after he became the purchaser in 1941. The insurance policy was dated April 17, 1948. His mother had been dead three years and he was occupying the property under a contract of purchase. In 29 Am.Jur., Insurance, Section 345, p. 306, this statement is found:

"As soon as any interest in property vests in the vendee, he has an insurable interest therein, as in the case of a vendee under an executory contract of purchase which operates to vest in him an equitable title to the property. This is true even though the contract is voidable for fraud, since the fact that the contract is thus voidable does not affect the interest transferred and the contract operates until it has been rescinded. It is not material that the legal title to the property has not passed to the vendee, who has paid part of the purchase price; and the insurable interest of the vendee is not defeated by the fact that the contract of purchase is unenforceable under the statute of frauds, * * * The destruction of property is a real loss to the person in possession, who claims title under an executory con-

tract of purchase, and neither the fact that he owes the purchase money nor the contingency that his title may be defeated by his inability subsequently to perform the conditions of his contract defeats the existence of an insurable interest in him. * * *"

In Dolan v. Spencer, 92 Colo. 389, 21 P.2d 411, the Supreme Court of Colorado announced the rule as follows:

"Where insured buildings on land held under lease and option to purchase burned, insurance money stood in lieu of burned property, and went to purchaser.

"Purchaser under lease and unexercised option to purchase held not mere lessee so as to preclude him from claiming insurance from burned buildings, where vendor permitted purchase contract to stand and permitted purchaser to make substantial payment on mortgage."

While plaintiff states that it is not deemed necessary to brief the question of the Statute of Frauds, 15 O.S.1951 § 136, he calls attention to the following holdings of this Court on that subject, to wit:

"Oral contract for purchase of realty, where whole or part payment of purchase price has been made, and purchaser has gone into possession in good faith and made valuable improvements, is thereby taken out of the statute of frauds. McMaster v. Goss, 88 Okl. 115, 212 P. 304; Fulkerson v. Mara, 68 Okl. 272, 173 P. 811; Levy v. Yarbrough, 41 Okl. 16, 136 P. 1120."

We find that the only question we should determine here is who is the person entitled to the $1,000 paid into court by the insurance company under the policy taken out and paid for by Frank Cherry in 1948. The latter had an insurable interest in the property destroyed by fire December 13, 1948. It is not for us to determine in this case who owns the land at this time, either by conveyance or inheritance. We think the court erred in overruling plaintiff's motion for a directed verdict.

The judgment is reversed with instructions to enter judgment for the plaintiff for the insurance money paid into court.