OSCN Found Document:HENSLEY v. STATE FARM FIRE AND CASUALTY CO.

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 HENSLEY v. STATE FARM FIRE AND CASUALTY CO.
2017 OK 57
Case Number: 112417
Decided: 06/20/2017
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2017 OK 57, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

KENNETH HENSLEY, and individual, and BOB DOUGLAS, an individual, Plaintiffs/Appellants,
v.
STATE FARM FIRE AND CASUALTY COMPANY, a foreign corporation, Defendant/Appellee.

CERTIORARI TO THE OKLAHOMA COURT OF CIVIL APPEALS, DIVISION NO. III

¶0 Buyer of real estate by contract for deed brought an action against insurer based upon an allegation of a breach of the implied-in-law duty of good faith. Insurer filed a motion for summary judgment and argued buyer was a stranger to the insurance contract and could not bring an action against insurer. The trial court, the Honorable Daman H. Cantrell, District Judge for Tulsa County granted insurer's motion for summary judgment. The judgment was appealed and affirmed by the Court of Civil Appeals. We hold buyer's action in this case for breach of the implied-in-law duty of good faith by an insurer is based upon his status as an insured or third party beneficiary; and buyer's equitable title to property arising from a contract for deed is insufficient by itself to confer upon him the status of an insured. We hold buyer presented facts on the issue whether he was an intended third party beneficiary, and these facts and their inferences were disputed by insurer. Whether buyer is a third party beneficiary and an insured under the policy based upon disputed facts and inferences is a matter for the trier of fact and summary judgment for insurer must be reversed.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL 
APPEALS VACATED; ORDER OF THE DISTRICT COURT REVERSED;
CAUSE REMANDED FOR FURTHER PROCEEDINGS 

William R. McMahon, Jr., Tulsa Oklahoma, for Plaintiffs/Appellants, Kenneth Hensley and Bob Douglas
Jeffrey A. Curran, GableGotwals, Oklahoma City, Oklahoma, and Lisa T. Silvestri, GableGotwals, Tulsa, Oklahoma, for Defendant/Appellee, State Farm Fire and Casualty Company.

EDMONDSON, J.

¶1 Douglas bought real property by a contract for deed. The seller of the property was the named insured on an insurance policy. After the property was damaged Douglas brought an action in the District Court against the insurer. We hold Douglas' equitable title to the property arising from the contract for deed is insufficient by itself to confer upon him a policy-created right of insurer's duty of good faith created by the insurance contract when Douglas is not expressly named in the policy as a lienholder, insured, loss payee, or third party beneficiary, or when the contract for deed is not expressly referenced in a part of the insurance policy. We also hold Douglas presented facts on the issue whether he was an intended third party beneficiary insured by the policy. Whether Douglas is a third party beneficiary is based upon a question of fact and summary judgment is reversed and the matter remanded to the District Court for further proceedings.

¶2 Kenneth Hensley and his wife owned real estate containing a mobile home in which they resided. They moved and sold the property to Douglas in May 2000 using a contract for deed. The contract for deed required Douglas to keep the premises insured, and the monthly payments made by Douglas to the Hensleys were required to include the premiums. The contract for deed specified any increase in insurance premiums during the term of indebtedness would be matched with a corresponding increase in monthly payments paid to the Hensleys. The Hensleys had an insurance policy with State Farm Fire & Casualty Company on the property and the Hensleys continued to make the premium payments and the policy continued to be renewed.

¶3 State Farm was informed of the change in the property's status, although the record on appeal does not indicate how this occurred. The record on appeal does not indicate whether State Farm possessed a copy of the contract for deed or if the contract for deed was recorded with a county clerk.[1] In 2004 a claim was made after a hail storm. State Farm's "Policy Notes" for the insurance with a date in October 2004 states the insured has a contract for deed with the tenant, Bob Douglas, and "this needs to be rewritten." Hensley testified his insurance agent has been the same for more than thirty years. He stated his reliance on the agent for all of his insurance needs on his cars and his two residences, and he had "not really" read the State Farm policy after he received it. Hensley testified he thought Douglas can "make claims" on the policy. Douglas contacted the agent, David Puckett, to report the loss.

¶4 Douglas and his wife lived in the residence after execution of the agreement in May 2000. Mr. Douglas reported to a county sheriff that a theft and vandalism of the property occurred in July 2008. The theft and vandalism included, but was not limited to, removal of appliances and kitchen cabinets and damage to structural items such as baseboards along walls.

¶5 Douglas and his wife were not living at the residence while the property was being remodeled to sell it to a third party. The utility services were not discontinued and remained on for continued use. Mr. Douglas, retired from a local fire department, would occasionally remain overnight in the residence while he worked on the remodeling. The dwelling was insured for $60,000, dwelling extension for $15,000, and personal property for $2,850.

¶6 During an investigation of the loss State Farm requested a copy of the contract for deed and Hensley's bank statements. Hensley signed an affidavit stating Douglas had not missed a payment during their agreement. State Farm required a proof of loss statement from Douglas. In March 2009 State Farm sent separate correspondence to Mr. Douglas and his wife referring to each of them as "Our Insured." In August 2009, State Farm sent Hensley a letter and stated therein its "Reservation of Rights" concerning the claim "had been resolved" and "coverage has been extended." By separate letter dated the same day, State Farm sent a check for $8,441.26 to Hensley with instructions that upon repairs to the residence he would be entitled to a supplemental claim up to the amount of $5,638.83, or the actual cost of repair, whichever was less. Plaintiffs stated that State Farm ultimately paid $13,494.16 for damage to the property.

¶7 Douglas' lawyer responded to State Farm and argued a proof of loss for $30,000 had been submitted to State Farm. A letter was then sent by State Farm to plaintiffs' lawyer that the policy included "Replacement Cost Coverage without any deduction for depreciation," and State Farm "will consider paying replacement costs benefits" "if we determine repair or replacement costs will be incurred because repairs are substantially underway or Mr. Hensley presents a signed contract acceptable to us."

¶8 State Farm communicated with plaintiffs' counsel after a reinspection of the property and indicated a supplemental payment of $5,052.90 would be paid due to State Farm revising the amount of damage to $21,042.10. Plaintiffs' counsel forwarded an estimate to State Farm made by a public adjuster. The estimate states an amount total of $75,271.75, although the totals stated therein actually add to a sum of $65,271.74.

¶9 Mr. Hensley and Mr. Douglas filed a petition in the District Court seeking damages from State Farm for an alleged breach of the insurance contract and failure to perform an implied-in-law duty of good faith. Hensley alleged he was "named inured on the policy," and Douglas alleged he possessed an insurable interest and was "an additional insured under the policy."

¶10 State Farm filed a motion for summary judgment and argued (1) the property was not insured due to vacancy as defined by the policy, (2) it had performed as required by the contract and no elements for bad faith claims existed, and (3) Douglas lacked standing to bring a bad faith claim because he was a stranger to the insurance contract. Plaintiffs responded and stated several facts alleged by State Farm were disputed.

¶11 State Farm filed a trial brief arguing Douglas was a stranger to the insurance contract and could not bring an action against State Farm for an alleged breach of the insurance contract or for an implied-in-law duty based upon a relationship of an insurer and its insured. State Farm challenged Douglas' right to sue State Farm because its policy was issued to Hensley as the named insured. State Farm alleged "Douglas was not on the policy, did not seek his own policy on the property, did not ask to be added to the State Farm policy, and State Farm was never asked by the insured to be on the policy."

¶12 Plaintiffs argued the Loss Payment provision of the insurance contact gave Douglas standing.[2]

10. Loss Payment. We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and;
a. reach agreement with you;
b. there is an entry of final judgment; or
c. there is a filing of an appraisal award with us.

This provision was replaced by an amendment:

10. Loss Payment. We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable:
a. within 60 days after we reach an agreement with you or there is a filing of an appraisal award with us; or
b. within 30 days after there is entry of a final judgment.

One question presented by the parties is whether this contractual loss payment clause creates a contractual duty to Douglas from which an implied-in-law covenant of good faith and fair dealing may arise.

¶13 Plaintiffs expanded on their loss-payment argument and contended Douglas was an insured under the policy because of 15 O.S. § 29 and Townsend v. State Farm Mutual Automobile Insurance Co.,[3] and a "legitimate contractual expectation" existed that State Farm would act in good faith towards Douglas as an insured.[4]

¶14 Plaintiffs' response to defendant's second motion for summary judgment states plaintiffs "incorporate their arguments and facts in their response to Defendant's First Motion for Summary Judgment." Plaintiffs' Response makes such incorporation twenty-eight times.[5] Douglas used these references with a few additional expressly stated facts when disputing the facts asserted in State Farm's motion for summary judgment. Plaintiffs' response to the defendant's first motion for summary judgment is not in the appellate record for this appeal. An appellant has a burden to present a record on appeal that demonstrates the alleged error in the trial court's decision.[6] Whatever facts are in Douglas' first response to State Farm's motion for summary judgment and incorporated by reference in his second response, they are not before this Court on the record submitted to us by Douglas unless they also appear in the material actually submitted to this Court.

¶15 The trial court granted State Farm's motion for summary judgment and entered a final judgment against Douglas. The trial court determined Douglas "is a stranger to the insurance contract and has no standing to sue." The Court of Civil Appeals affirmed and Douglas sought certiorari. Douglas argues on certiorari he has standing to bring an action against State Farm because (1) he is a third party beneficiary insured under the policy, (2) he is defined as an insured by the loss payment provision, (3) the insurance policy was purchased for the purpose of insuring the interests of both Hensley and Douglas, and (4) at the time of the loss State Farm had known the policy had been purchased for this purpose and had engaged in conduct consistent with this purpose.

I.

¶16 In tort jurisprudence, liability is based upon the existence of a legal duty attached to a particular relationship between the parties. For example, negligence "is . . . a term of relation" where the existence of a legal duty must be owed by the defendant to the particular plaintiff bringing the action, and we have explained a simple tort negligence case involves a duty by the defendant owed to the plaintiff.[7] A particular tort action is based upon whether the particular defendant owes a legal duty to the particular plaintiff.[8] In the matter before us, the often described tort of an implied-in-law duty of good faith and fair dealing has as an element of the tort a duty arising from a breach of the contractually-based relationship[9] owed by an insurer where the level of culpability is more than simple negligence.[10]

¶17 The insurer's duty may arise from one of three possible sources. For example, we have explained an action alleging an insurer's breach of the implied-in-law duty of good faith and fair dealing may be based on an action ex contractu alleging an insurer's failure to meet its obligation for payment created by (1) an express promise to pay in the insurance contract, (2) a promise implied in fact, or (3) a promise implied in law.[11] An example of a promise implied in fact is a third-party beneficiary contract and a promise implied in law is a quasi-contractual duty imposed by law on the contract.[12] However, an alleged breach of an insurer's promise to pay, whether express or implied, is not sufficient to show a breach of the implied duty of good faith because the implied-in-law duty of good faith and fair dealing does not extend to a person merely because that person is entitled to payment from insurance proceeds.[13]

¶18 We recently explained in Trinity Baptist Church that Oklahoma law recognizes an implied duty on the part of an insurer to deal fairly and act in good with regard to its insured.[14] Further, we explained imposition of this duty was not extended to an individual who was not a party to the contract, and non-insurer defendants did not possess this duty: an action based on the duty to deal fairly and act in good faith will not lie against a stranger to the contract.[15] We noted a few exceptions to the rule and explained the duty of good faith and fair dealing would apply when a third party stranger to the insurance contract acts so like an insurer that the third party develops a special relationship with the insured, and that third party possesses power, motive, and opportunity to act unscrupulously.[16]

¶19 Trinity Baptist Church addressed the question who owes the duty to deal fairly and act in good faith, and the question before us today is the other side of this duty/right coin,[17] to whom is the duty owed? Our analysis must start at the same point as Trinity Baptist Church, the insurance contract itself and whether plaintiffs' action is based upon an express promise, a promise implied in fact, or a promise implied in law. Again, this is so because the relationship between an insurer and its insured is defined and governed by the insurance policy and its accompanying implied-in-law covenant of good faith and fair dealing.[18]

¶20 When an alleged breach of the implied-in-law duty of good faith arises from an alleged breach of a contractual duty to pay required by an insurance policy, we have examined whether the policy required the insurer to pay the particular plaintiff. For example, in May v. Mid-Century Ins. Co.,[19] we analyzed whether a loss payment provision in a policy between an insurer and condominium owners' association created a third-party beneficiary obligation owed to a particular owner of a condominium unit. We noted a loss-payment clause in the policy provided an option for the insurer to pay the named insured for loss of a particular owner's property or pay the owner of the property for the loss in satisfaction of the association's insurance claim for that loss.[20] We concluded that the carrier owed the unit owner no implied-in-law duty arising from an alleged breach of the insurance contract for the following reason.

The loss payment provisions . . . give Insurer the exclusive choice to settle covered losses directly with the unit owners or with Association "for the account" of the unit owners.
¶24 The contract's expressed intent to confer solely on Insurer the power to regard all contractual obligations due under the policy as extending to the named insured specifically negates the existence of any enforceable obligation in favor of unit owners qua third-party beneficiaries. No obligation may be imposed upon a promissor in favor of a third party if the contract expressly relieves that promissor of such liability to that third party.

May, 2006 OK 100, ¶¶ 23, 24, 151 P.3d at 140 (emphasis, material, and note deleted).

In May the Court examined to whom payment was required by the insurance contact, and the insurer's option to make payment to the association had the legal effect of negating a contractual duty and implied-in-law good faith duty owed to a unit owner who was not a named insured. No obligation or contractual duty was due from the insurer as a promissor to the unit owner, and this absence of a contractual obligation resulted in the absence of a third party beneficiary status.[21]

¶21 When an unqualified contractual right to receive payment was absent so too was a right to receive the implied-in-law duty of good faith relating to that payment. May, supra. However, when a person possesses a legal right to payment from insurance proceeds such does not mean that an implied-in-law duty of good faith is also present in that relationship. One obvious example occurred when we explained that a third-party claimant to the insurance contract is not owed an implied-in-law duty of good faith and fair dealing.[22]

¶22 A contract made expressly for the benefit of a third person may be enforced by that person at any time before the parties thereto rescind it. 15 O.S.2011 § 29.[23] For example, a named beneficiary in a life insurance contract who is third party beneficiary is owed the implied-in-law duty of good faith.[24] It is not necessary that a party be specifically named as a beneficiary or third party beneficiary, but only that the contract be made "'expressly for the benefit of a third person'" and 'expressly' simply means 'in an express manner; in direct or unmistakeable terms; explicitly; definitely; directly.'"[25] When an insurance policy expresses an intent to cover a person's property or make that person a loss payee under the terms of the policy, that person is considered as a co-insured or a third-party beneficiary.[26] We must address the lienholder and loss payee clauses in the policy which Douglas relies upon.

II

¶23 In many jurisdictions property damage insurance is a personal contract which does not attach to or run with the title to the property insured.[27] Oklahoma is a jurisdiction where insurance is a personal contract.[28] One consequence of this principle is that a mortgage usually has a provision requiring a mortgagor to obtain insurance to protect a mortgagee's interest.[29]

¶24 Under a standard mortgage clause, when a loss occurs an insurer is required to first make payment to mortgagee to extent of its interest in the property, and then to pay balance of loss, if any, to mortgagor so long as mortgagor has not breached any conditions of the policy.[30] When a policy contains this language an insured's claim may be denied without destroying a valid claim of a lienholder or mortgagee. Where a policy contains this form of a mortgage clause, the lienholder or mortgagee has an independent contract with the insurer, "and the effect is the same as though the mortgagee had procured a separate policy naming him or herself as the insured."[31] Courts in some states have held a named loss-payee is "an insured" to the extent he or she can sue to enforce a policy under which the party would ultimately be paid.[32] A standard loss payee clause expressly protects the mortgagee against mortgagor's misdeeds.[33] In summary, the standard or union loss payable clause creates an independent contract between the insurer and the mortgagee or lienholder for the latter's benefit, it is a separate and distinct agreement from that between the insurer and the mortgagor, and the rights of the lienholder are not derivative from the rights of the named insured.[34]

¶25 In instances of a simple loss payee clause rather than a standard or union mortgage clause, a mortgagee's interest in the insurance proceeds is treated as a security for the debt and the interest ceases when the debt is extinguished.[35] In this instance the mortgagee's right to recover the proceeds is a derivative which is completely dependent upon the validity of the insured's (mortgagor's) claim against the insurer.[36] A simple loss payee clause does not create a contract between a mortgagee and an insurer.[37]

¶26 A contract for deed between Hensley and Douglas is construed as a mortgage for the purpose of their obligations and rights.[38] Douglas argued in the trial court he "is the mortgagor of the property at issue."[39] When the contract for deed was executed and Douglas took possession, an equitable title to the real property passed and Hensley retained a legal title.[40] The contract for deed created a contractual duty for Douglas to obtain insurance, but Douglas and Hensley understood this contractual agreement was fulfilled by Hensley obtaining the insurance with payment for that insurance coming from payments made by Douglas to Hensley.

¶27 Hensley's policy in the case before us requires insurer to pay a claim in order of precedence of any liens "if a lienholder is named in this policy." The policy provides that a lienholder may make a "valid claim" against the policy although a claim by the insured has been denied. The only lienholder expressly named in the State Farm policy is Mitchell Mortgage Company, LLC, its successors and assigns. No other person or entity is expressly named as a lienholder in the policy or renewal certificate. There is nothing in the record to suggest the contract-for-deed agreement between Hensley and Douglas was endorsed to the policy.[41]

¶28 The loss-payment clause states that payment will be made to "you" the named insured, unless some other person is named in the policy or is legally entitled to receive payment. This language states payment will be made (1) to the named insured, or (2) another person named in the policy, e.g., a named lienholder, or (3) a "person legally entitled to receive payment." Douglas argues he is an unnamed intended insured, an unnamed lienholder, and a person legally entitled to payment.

¶29 In 1980, the U. S. Court of Appeals for the Tenth Circuit relied upon three opinions from this Court and explained the following.

In its usual context, the personal contract rule is applied to deny the claim of a mortgagee to proceeds of a fire insurance contract when the mortgagee was not named as insured in a loss-payee or mortgage clause. . . . But an important exception to the rule arises if the mortgagor promises to insure the property for the mortgagee's benefit: even though the insurance proceeds are not made payable to the mortgagee, the latter nevertheless acquires an equitable lien on the proceeds to the extent of the indebtedness.

Brown v. First Nat. Bank of Dewey, 617 F.2d 581, 583 (10th Cir. 1980), citing Welch v. Montgomery, 1949 OK 80, 205 P.2d 288, 9 A.L.R.2d 294; Frensley Bros. Lumber Co. v. Fireman's Fund Ins. Co., 1924 OK 714, 229 P. 598, and Smith & Furbush Mach. Co. v. Huycke, 1918 OK 618,177 P. 919.

This language focuses on whether a party was named in loss-payee or mortgage clauses in a policy. It focuses on a difference between a contractually created right to insurance proceeds and a right created in equity to insurance proceeds. Welch and Frensley appear to require a party to be named in the policy to possess a contractual right to insurance proceeds. This analysis is consistent with both Trinity Baptist Church, supra, and May v. Mid-Century Ins. Co., supra, and we must look to the source of the underlying right to determine if it is a policy-created right upon which a implied-in-law good faith duty may be based.

¶30 We hold Douglas' right created in equity, his equitable title to the property arising from the contract for deed, is insufficient by itself to confer upon him a policy-created insurer's duty of good faith created by the insurance contract when Douglas is not expressly named in the policy as a lienholder, insured, loss payee, or third party beneficiary, or when the contract for deed is not expressly referenced in a part of the insurance policy.

¶31 However, we stated in 1992 concerning a third party's beneficiary contractual status: "He need not be a party to nor be named in the contract to occupy a third-party beneficiary status."[42] State Farm's argument focuses on whether Douglas was named in the policy, but Douglas' argument focuses on whether the policy was written, as renewed, with the parties' intent to make him an unnamed co-insured, or unnamed lienholder, or loss-payee, and he relies upon evidence concerning the conduct of State Farm. In summary, Douglas argues he, Hensley, and State Farm have construed the policy provisions as conferring on him a third party beneficiary status.

III.

¶32 This Court has recognized for more than one-hundred years that an insurer and insured are free to agree to a policy's provisions and how they are construed, provided such agreement does not conflict with public policy.[43] An insured and insurer are free to contract for that quantum of coverage which one is willing to extend and the other is willing to purchase.[44] The parties are bound by the terms of their agreement and the Court will not undertake to rewrite the same nor to make for either party a better contract than the one which was executed.[45]

¶33 Douglas refers to the expectations of himself and Hensley concerning the status of Douglas as an insured. A party's unilateral expectation of possessing a contractual status of a named insured, lienholder, or loss payee, is insufficient to create such status. A contractual status of insured, lienholder, or loss payee is created by an agreement of the both insured and insurer and expressed in the language of the policy.[46]

¶34 Douglas relies on more than a unilateral expectation. He relies upon (1) the insurer treating him and his wife as insured for the purpose of submitting proof of loss for a claim on the policy and in correspondence to them both naming them as an insured, (2) his equitable interest in the property as a person legally entitled to receive the insurance proceeds which was known by the insurer for several years prior to his claim, and (3) the insurance covered the very harm for which the risk was assumed, i.e., damage to the mobile home, and the interest insured by the policy was for the entire property and not just the amount of Hensley's insurable interest.

¶35 First, Douglas relies on the actions of the insurer treating him as an insured. The parol evidence rule teaches that unless fraud or mistake is involved, pre-contract negotiations and oral discussions are merged into, and superseded by, the terms of an executed writing.[47] The practical construction of an agreement (to be derived from the acts and conduct of the parties) is an available tool only when ambiguity appears to be present.[48]

¶36 Generally, ambiguity in written language is not created by the conduct of one of the parties to a contract. We have explained this principle stating the conduct of a party to a written contract is examined in the event of an ambiguity in the written language.[49] When the intent of the contracting parties cannot be determined by examining the instrument a court must consider parol and extrinsic evidence.[50] More specifically, a patent ambiguity "is that which appears on the face of the instrument, and arises from the defective, obscure, or insensible language used."[51] The presence of patent ambiguity allows for the conduct of the parties to be used to determine the meaning of the contract. Douglas does not rely on a patent ambiguity in the contract.

¶37 In the matter before us, Douglas is invoking the concept that the conduct of the parties may be used to show a latent ambiguity in a written instrument, specifically, that Douglas is an insured/lienholder/loss-payee in the policy. A latent ambiguity may arise, not from the face of an instrument, but by the existence of extraneous facts.[52] Black's Dictionary states a "latent ambiguity" is "where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings."[53]

¶38 This Court has stated on more than one occasion an insured may not invoke the principle of latent ambiguity as a means to alter a term in a policy when that term may be applied in the circumstances without creating an ambiguous meaning.[54] Some courts have stated a latent ambiguity is present when extrinsic evidence demonstrates that there is ambiguity concerning the identity of the intended beneficiary of a promise in an insurance contract. For example, in a 1940 opinion by the Michigan Supreme Court, Hall v. Equitable Life Assurance Society of the United States,[55] the court stated where evidence is introduced concerning a doubt as to what party is to receive the benefit of an insurance policy, parol evidence is admissible; and although the insurance policy clearly named a certain person as the beneficiary, extrinsic evidence made it clear that another person was to be named the beneficiary.[56] When an issue arises concerning the intent of the contracting parties for application of a contract, the issue is decided by the trier of fact.[57] When third party beneficiary status is dependent upon whether contracting parties intended to benefit the third party, that determination of an actual intent is an issue of fact to be determined by the trier of fact.[58]

¶39 Douglas' argument is that both his interest and Hensley's are covered by the policy, and the nature of the relationship involving State Farm and Douglas and Hensley shows an intent by the insurer to cover both interests. A contractual duty in a contract for deed to maintain insurance is a continuing duty, and "the proceeds of policies so taken out are considered, as between the parties, as representing or taking the place of the property and the rights of the vendor and purchaser are adjusted according to their legal and equitable rights."[59] Douglas and Hensley indicated premiums were collected for, and the policy was intended to cover, an amount covering the entire value of the property. The policy contains language limiting the amount covered to the insurable interest of the named insured, Hensley. Generally, when a mortgagor obtains insurance for the value of property a mortgagee was entitled to insurance proceeds to the extent of its mortgage, and after satisfaction of the mortgage the remainder of the insurance proceeds would be paid to the property owner to the extent of that party's economic/insurable interest.[60] In this circumstance, the economic interests of both mortgagee and mortgagor were covered by the insurance policy.

¶40 Generally, a mortgagee's insurable interest is the amount of the mortgage debt,[61] and a mortgagor's insurable interest continues after foreclosure during a period of redemption.[62] Douglas' implied argument is that his economic and insurable interests as well as Hensley's are covered by the single policy when premiums were paid to cover the value of the property by him to Hensley; and premiums were not paid to cover the mere economic or insurable interest of Hensley as measured by payments of principal remaining to be paid by Douglas on a contract for deed. Allowing Douglas and Hensley to recover for the loss without being limited by Hensley's economic interest does not undermine the public policy concerns underlying the insurable interest requirement where Douglas/mortgagor and Hensley/mortgagee have united together and the loss for which they seek insurance proceeds is based upon a contractual risk assumed by the insurer that has not been altered.[63]

¶41 Some of the documents used in support of summary judgment by State Farm appear to indicate State Farm distinguished between Hensley as an insured and Douglas as a "tenant." Douglas presented facts for the purpose of showing he was treated and considered as an insured by State Farm, and the policy was issued and renewed to cover the entire value of the property and not just the insurable interest of Hensley. Douglas presented facts on the issue whether he was an intended third party beneficiary insured by the policy. Whether Douglas was an intended beneficiary must be decided by the trier of fact and not on summary judgment. Douglas' action for breach of the implied-in-law good faith duty by State Farm is based upon whether Douglas was an insured, and whether Douglas was an insured is based upon an adjudication of the parties' intent which in turn is based upon a trier of fact making that determination based upon Douglas' allegations of fact and facts submitted by the other parties.

Conclusion

¶42 We hold Douglas' equitable title to property arising from a contract for deed is insufficient by itself to confer upon him the status of an insured. Douglas' bad-faith claim against State Farm is based upon whether Douglas was an insured or third party beneficiary to the insurance contract. Douglas presented facts that State Farm construed the policy to include Douglas as an insured or beneficiary. Whether Douglas is a third party beneficiary and an insured under the policy is based upon an adjudication of disputed material facts. We are required to take all inferences in favor of the party opposing summary judgment, and when it appears that there are disputed material facts a summary judgment must be reversed.[64] The opinion of the Court of Civil Appeals is vacated. Summary judgment granted to State Farm is reversed and the matter is remanded to the District Court for further proceedings.

¶43 GURICH, V. C. J., KAUGER, WATT, EDMONDSON, COLBERT, and REIF, JJ., concur.

¶44 COMBS, C. J., WINCHESTER, AND WYRICK, JJ., dissent.

FOOTNOTES

[1] 16 O.S.2011 § 11A states in part: All contracts for deed for purchase and sale of real property made for the purpose or with the intention of receiving the payment of money and made for the purpose of establishing an immediate and continuing right of possession of the described real property, whether such instruments be from the debtor to the creditor or from the debtor to some third person in trust for the creditor, shall to that extent be deemed and held mortgages, and shall be subject to the same rules of foreclosure and to the same regulations, restraints and forms as are prescribed in relation to mortgages. No foreclosure shall be initiated, nor shall the court allow such proceedings, unless the documents have been filed of record in the county clerk's office, and mortgage tax paid thereon, in the amount required for regular mortgage transactions.

[2] Plaintiffs' Response and Objection to Defendant's Second Motion for Summary Judgment & Brief in Support, O.R. Tab 6, at pp. 17-18; Plaintiffs' Response & Objection to Defendant's Trial Brief on the Issue of Bob Douglas' Standing to Sue, O.R. Tab 10,at pp. 2-3.

[3] 1993 OK 119, 860 P.2d 236.

[4] Plaintiffs' Response and Objection to Defendant's Second Motion for Summary Judgment & Brief in Support, O.R. Tab 6, at p. 18. Plaintiffs' Response & Objection to Defendant's Trial Brief on the Issue of Bob Douglas' Standing to Sue, O.R. Tab 10,at pp. 3-4.

[5] Plaintiffs' Response and Objection to Defendant's Second Motion for Summary Judgment & Brief in Support, O.R. Tab 6, at pp. 3, 4 (x 2), 5 (x 2), 6 (x3), 7 (x3), 8 (x3), 9 (x4), 10 (x3), 11 (x3), and 12 (x4).

[6] Mustang Run Wind Project, LLC v. Osage County Bd. of Adjustment, 2016 OK 113, n. 14, 387 P.3d 333, citing Ray v. Ray, 2006 OK 30, 12, 136 P.3d 634, 637 and Pracht v. Oklahoma State Bank, 1979 OK 43, 592 P.2d 976, 978.

[7] Fargo v. Hays-Kuehn, 2015 OK 56, ¶ 13, 352 P.3d 1223, 1227 (three elements of a negligence action are (1) a duty owed by the defendant to protect plaintiff from injury (2) failure to fulfill that duty and (3) injuries to plaintiff proximately caused by defendant's failure to meet the duty). See also Palsgraf v. Long Island R. Co., 248 N.Y. 339, 162 N.E. 99, 100, 101 (1928) (Chief Justice Cardozo's opinion explained there must be a breach of the defendant's duty owed to the particular plaintiff in a negligence action.).

[8] Palsgraf v. Long, supra, at note 7; William L. Crowe, Sr., The Anatomy of a Tort--Greenian, As Interpreted by Crowe Who Has Been Influenced by Malone--A Primer, 44 Loy. L. Rev. 647, 650 (1999) (one part of the "duty question" is whether "a rule or principle of law extends to or is intended to protect this plaintiff from this type of harm arising in this manner").

[9] An action raising a tort-based breach of the implied-in-law duty of good faith and fair dealing is an "independent tort" separate from a contract-based theory for the purpose of a choice-of-law analysis governing a tort action. Martin v. Gray, 2016 OK 114, ¶¶ 5-11, 385 P.3d 64, 66-67. However, a theory used to press for legal recovery does not delimit a cause of action: "While numerous items of damage may result from one injurious occurrence, the party who seeks to recover for an insured loss has but a single cause of action, although its claim may be advanced concurrently on ex contractu and ex delicto theories." Taylor v. State Farm Fire & Cas. Co., 1999 OK 44, ¶ 9, 981 P.2d 1253, 1257-1258.

[10] Badillo v. Mid Century Ins. Co., 2005 OK 48, ¶ 28, 121 P.3d 1080, 1094 ("In our view, under Christian and later cases, the minimum level of culpability necessary for liability against an insurer to attach is more than simple negligence, but less than the reckless conduct necessary to sanction a punitive damage award against said insurer."), expressly referencing Christian v. American Home Assurance Co., 1977 OK 141, 577 P.2d 899, 901.

[11] Shebester v. Triple Crown Insurers, 1992 OK 20, 826 P.2d 603, 610. See also Uptegraft v. Home Ins. Co., 1983 OK 41, 662 P.2d 681, 684 ("An action is one ex contractu when it is derived from (a) an express promise, (b) a promise implied in fact or (c) a promise implied in law.").

[12] Shebester v. Triple Crown Insurers, 826 P.2d at 610. See also Shepard v. Farmers Ins. Co., Inc., 1983 OK 103, 678 P.2d 250, 251 ("Under Oklahoma law, insurance policies are issued pursuant to statutes, and the provisions of those statutes are given force and effect as if written into the policy."); Sholer v. State ex rel. Dept. of Public Safety, 1995 OK 150, 945 P.2d 469, 475 (a legally enforceable obligation not arising from the assent of the parties may be implied in law); Booker v. Sears Roebuck & Co., 1989 OK 156, 785 P.2d 297, 300, 301-305 (Summers, J., concurring and joined by Doolin, J.) (in an express contract the terms are stated by words, an implied in fact contract uses the partes' conduct for terms of the contract, and a quasi-contract is implied from law, i.e., the implied-in-law obligation occurs where the law creates a contract or impresses a legal obligation upon an existing contract).

[13] Roach v. Atlas Life Insurance Company, 1989 OK 27, 769 P.2d 158, 161.

[14] Trinity Baptist Church v. Brotherhood Mut. Ins. Services, L.L.C., 2014 OK 106, ¶ 11, 341 P.3d 75, 79, citing Timmons v. Royal Globe Ins. Co., 1982 OK 97, ¶ 12, 653 P.2d 907; Christian v. American Home Assur. Co., 1977 OK 141, ¶ 25, 577 P.2d 899.

[15] Trinity Baptist Church, 2014 OK 106, ¶ 11, 341 P.3d at 79, 80, citing Timmons , 1982 OK 97, ¶¶ 16-17, 643 P.2d 907.

[16] Trinity Baptist Church, 2014 OK 106, ¶ 16, 341 P.3d 75, 81, citing Badillo v. Mid Century Ins. Co., 2005 OK 48, ¶ 5, 121 P.3d 1080; Wathor v. Mutual Assurance Administrators, Inc., 2004 OK 2, ¶ 13, 87 P.3d 559.

[17] A legal duty corresponds to a correlative legal right secured by a legal remedy for the breach of the duty. Silver v. Slusher, 1988 OK 53, n. 28, 770 P.2d 878, 884, quoting W. Hohfeld, Fundamental Legal Conceptions (1923) at 78, and Leake, Law of Property in Land (1st ed., 1874) at 1-2, and explaining rights against persons imports a correlative positive legal duty, and the performance of that duty "is secured by the legal remedies provided for a breach of that duty."

[18] Trinity Baptist Church, 2014 OK 106, ¶ 29, 341 P.3d 75, 86.

[19] 2006 OK 100, 151 P.3d 132.

[20] May, 2006 OK 100, n. 18, 151 P.3d at 137.

[21] May, 2006 OK 100, ¶ 25, 151 P.3d at 141 ("One to whom, by the express terms of a contract, no obligation is due from its promissor, cannot qualify for the status of an intended or implied third-party beneficiary.").

[22] Badillo v. Mid Century Ins. Co., 2005 OK 48, ¶ 26, 121 P.3d 1080, 1093 ("An insurer may not treat its own insured in the manner in which an insurer may treat third-party claimants to whom no duty of good faith and fair dealing is owed."), quoting Newport v. USAA, 2000 OK 59, ¶ 15, 11 P.3d 190, 196.

[23] 15 O.S.2011 § 29: A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it.

[24] Roach v. Atlas Life Insurance Company, 1989 OK 27, 769 P.2d 158, 161-162.

[25] Keel v. Titan Const. Corp., 1981 OK 148, 639 P.2d 1228, 1231, quoting Watson v. Aced, 156 Cal.App.2d 87, 319 P.2d 83 (Cal. 1957). See also Shebester v. Triple Crown Insurers, 1992 OK 20, 826 P.2d 603, 610 ("A contract made expressly for a third person's benefit is enforceable by that person. He need not be a party to nor be named in the contract to occupy a third-party beneficiary status.") (notes omitted).

[26] Travelers Ins. Companies v. Dickey, 1990 OK 109, 799 P.2d 625, 629 ("Had the policy expressed an intent to cover the roofer's property or to make him a loss payee under its terms, he would be considered a co-insured or a third-party beneficiary.") (notes omitted).

[27] See, e.g., Niagara Fire Ins. Co. v. Aebischer, 1934 OK 684, 44 P.2d 5, 8 (fire insurance policy is a personal contract which does not run with the land) (Syllabus by the Court); Washington Mut. Bank v. Jacoby, 180 Cal.App.4th 639, 644, 103 Cal.Rptr.3d 245 (2009) (a successor with respect to a person's interest in real property does not thereby become a successor of that person's interest in an insurance policy covering that property; and an insurance policy does not run with the land), citing Long v. Keller, 104 Cal.App.3d 312, 163 Cal.Rptr. 532 (1980) and Alexander v. Security-First Nat. Bank, 7 Cal.2d 718, 62 P.2d 735 (1936); Waltman & Co. v. Leavitt, 1999 ME 4, ¶ 9, 722 A.2d 862 (insurance contracts do not run with the land).

[28] Niagara Fire Ins. Co. v. Aebischer, supra, note 27. See also Brown v. First Nat. Bank of Dewey, 617 F.2d 581, 583 (10th Cir. 1980) ("Oklahoma accepts the personal contract theory of insurance.") citing Welch v. Montgomery, 1949 OK 80, 9 A.L.R.2d 294, 205 P.2d 288, 290, quoting In Re San Joaquin Valley Packing Co., 295 F. 311, 313 (9th Cir. 1924) "a policy of fire insurance is purely a matter of personal contract. It does not attach to the insured property, nor does it run with the title thereto"). See, e.g., Cherry v. Cherry, 1959 OK 94, 343 P.2d 1066, 1068-1069 (A purchaser of real property in possession did not receive deed due to dispute whether purchase price was to be paid prior to or upon delivery of the deed and property was destroyed by fire; Supreme Court noted buyer had insurable interest and ordered trial court to enter judgment for buyer who had purchased insurance and was thereby entitled to insurance proceeds.).

[29] McGinnity v. Kirk, 2015 OK 73, n. 46, 362 P.3d 186, 197 (discussing loss payable and standard mortgage clauses used to protect a mortgage lender's interest in property).

[30] 4 Couch on Insurance, § 65:32 (3d ed. 2016) citing Sportsmen's Park, Inc. v. New York Property Ins. Underwriting Ass'n, 97 A.D.2d 893, 470 N.Y.S.2d 456 (3d Dep't 1983), order aff'd, 63 N.Y.2d 998, 483 N.Y.S.2d 1012, 473 N.E.2d 262 (1984) (Under standard mortgage clause, insurer is required to first make payment to mortgagee to extent of its interest in the property, and then to pay balance of loss, if any, to mortgagor so long as mortgagor has not breached any conditions of the policy.).

[31] 4 Couch on Insurance, § 65:32 (3d ed. 2016) citing Oklahoma State Union of Farmers' Educational and Co-op. Union of America v. Folsom, 1958 OK 104, 325 P.2d 1053, 1056, citing Fidelity-Phenix Fire Ins. Co. v. Cleveland, 1916 OK 180, 156 P. 638. ("Defendant admits that a standard mortgage clause creates a separate contract of insurance in favor of the mortgagee, which cannot be defeated by any acts of the insured."); and Fidelity-Phenix Fire Ins. Co. v. Brennan, 85 N.H. 291, 158 A. 124 (1931) ("The intent of the union mortgage clause is "to make the policy operate as an insurance of the mortgagors and the mortgagees separately, and to give the mortgagees the same benefit as if they had taken out a separate policy, free from the conditions imposed upon the owners, making the mortgagees responsible only for their own acts."), quoting Hastings v. Westchester Fire Ins. Co., 28 Sickels 141, 73 N.Y. 141, 154 (1878); Bennett Motor Co. v. Lyon, 14 Utah 2d 161, 380 P.2d 69 (1963).

[32] Newcourt Financial, Inc. v. Canal Ins. Co., 341 Ark. 181, 15 S.W.3d 328, 333 (2000) (describing a loss-payee as a beneficiary of a policy when loss-payee was specifically named in the policy).

[33] Connor v. Northwestern Nat. Cas. Co., 1989 OK 85, 774 P.2d 1055, 1056-1057. Cf. Foremost Ins. Co. v. Allstate Ins. Co., 439 Mich. 378, 486 N.W.2d 600, 603 (1992) (characterizing a loss payable clause as a "hybrid" when it provided less than complete protection to a lienholder/mortgagee), citing Progressive American Ins. Co. v. Florida Bank at Daytona Beach, 452 So.2d 42, 44-45 (Fla.1984).

[34] 4 Couch on Insurance, § 65:32, supra. See also Bennett Motor Co. v. Lyon, 14 Utah 2d 161, 380 P.2d 69, 70-71 (1963).

[35] Wilson v. Glancy, 1995 OK 141, 913 P.2d 286, 289-290, citing Willis v. Nowata Land and Cattle Company, Inc., 1989 OK 169, 789 P.2d 1282, 1286.

[36] Willis v. Nowata Land and Cattle Co., Inc., 1989 OK 169, 789 P.2d at 1286.

[37] 4 Couch on Insurance, § 65:23, supra, ("A simple loss-payable clause does not give rise to any contract between the mortgagee and the insurer, so that there is no privity of contract between the insurer and the mortgagee that would permit the latter to recover regardless of acts of the mortgagor, not participated in by him or her, which cause a forfeiture. The mortgagee thus has no greater rights than the insured would have under the insurance contract.") (notes omitted).

[38] 16 O.S.2011 § 11A, supra, at note 1.

[39] Plaintiffs' Response and Objection to Defendant's Trial Brief etc., O.R. Tab 10, at p. 5.

[40] McGinnity v. Kirk, 2015 OK 73, ¶ 26, 362 P.3d 186, 195.

[41] See, e.g., Conner v. Northwestern Nat. Cas. Co., 1989 OK 85, 774 P.2d 1055, 1056 (explaining a contract for sale of real estate endorsed to a policy requiring insurance to be maintained for named seller without reference to a mortgage created a provision equivalent to a simple loss payee clause).

[42] Shebester v. Triple Crown Insurers, supra, note 25.

[43] Mutual Ben. Life Ins. Co. Of Newark, N.J. v. Welch, 1917 OK 627, 175 P. 45, 48 ("The common law, of course, forbids, among other things, any "form" of policy of life insurance which violates the public policy in any respect."); Thomas v. National Auto. and Cas. Ins. Co., 1994 OK 52, 875 P.2d 424, 427-428 (discussing cases where specific policy exclusions were contrary to public policy as expressed in state statutes); Continental Casualty Co. v. Goodnature, 1935 OK 102, 41 P.2d 77, 79-80 (1935) (absent disagreement between insured and insurer, the construction placed by them upon the policy ordinarily controls).

[44] Bituminous Cas. Corp. v. Cowen Const., Inc., 2002 OK 34, ¶ 9, 55 P.3d 1030, 1033, citing American Iron & Machine Works Co., Inc. v. Insurance Company of North America, 1962 OK 197, 375 P.2d 873 (Syllabus by the Court) and Torres v. Sentry Insurance, 1976 OK 195, 558 P.2d 400, 401.

[45] Bituminous Cas. Corp. v. Cowen Const., Inc., 2002 OK 34, ¶ 9, 55 P.3d at 1033, citing Max True Plastering Co. v. U.S. Fidelity & Guaranty Co., 1996 OK 28, 912 P.2d 861, 869.

[46] Bituminous Cas. Corp., 2002 OK 34, ¶ 9, 55 P.3d at 1033 (an insurance contract is an agreement between insured and insurer).

[47] Lewis v. Sac and Fox Tribe of Oklahoma Housing Authority, 1994 OK 20, n. 78, 896 P.2d 503, 514.

[48] Lewis v. Sac and Fox Tribe of Oklahoma Housing Authority, 1994 OK 20, 896 P.2d at 514. See also Bonner v. Oklahoma Rock Corp., 1993 OK 131, 863 P.2d 1176, 1180-1181.

[49] Mercury Inv. Co. v. F. W. Woolworth Co., 1985 OK 38, 706 P.2d 523, 529. See, e.g., Farmer v. Trapp, 1962 OK 255, 3786 P.2d 596, 598 (The construction placed upon an ambiguous restrictive covenant by interested parties will be given great, if not controlling weight, when the written language is ambiguous on its face.). See also Coker v. Hudspeth, 1957 OK 15, 308 P.2d 291, 294 (when a deed possesses an element of uncertainty, parol evidence, the admissions of the parties, and other extraneous circumstances may be proved to ascertain its true meaning); Rosen v. Martin, 1924 OK 570, 226 P. 577, 582 ("If there were any ambiguity in the terms of the mortgage, so as to require construction, the construction placed upon it by the parties as shown by their subsequent acts and conduct will be followed by the court.").

[50] K & K Food Services, Inc. v. S. & H., Inc., 2000 OK 31, ¶ 15, 3 P.3d 705, 710.

[51] Black's Law Dictionary, 105 (4th ed. 1951) (defining ambiguity).

[52] Matter of Eversole, 1994 OK 114, 885 P.2d 657, 662 (explaining a latent ambiguity in a will arising from extraneous facts).

[53] Black's Law Dictionary, 105 (4th ed. 1951) (defining ambiguity).

[54] Bituminous Cas. Corp. v. Cowen Const., Inc., 2002 OK 34, ¶ 12 & n. 19, 55 P.3d 1030, 1034, citing Druggists' Mut. Fire Ins. Co. of Iowa v. Shaw, 1935 OK 132, 41 P.2d 69, 70 ( An insured cannot insist upon a strained construction of policy language in order to claim a patent ambiguity exists nor can the insured contradict the written instrument's plain terms under the guise of a latent ambiguity.). See also Duffey v. Scientific American Compiling Department, 1912 OK 96, 120 P. 1088, 1089 (a party may not destroy the written contract under the mask of explaining a latent ambiguity).

[55] 295 Mich. 404, 295 N.W. 204 (1940).

[56] Hall v. Equitable Life Assurance Society of the United States, 295 N.W. at 207.

[57] Newman v. Jackson,1943 OK 178, 138 P.2d 76, 77-78 (issue of the parties' intent concerning reasonable time to perform or terminate the contract was properly an issue for a jury to determine).

[58] Debary v. Harrah's Oper. Co., 465 F.Supp.2d 250, 261 (S.D.N.Y.2006) ("Third party beneficiary status is a question of fact, because the issue turns on whether the contracting parties intended their contract to directly benefit a third party."), aff'd, 547 F.3d 115 (2d Cir.2008).

[59] 77 Am. Jur. 2d, Vendor and Purchaser, § 309 (Second Edition, Insurance) (May 2017, update), citing Northwestern Mut. Ins. Co. v. Jackson Vibrators, Inc., 402 F.2d 37 (6th Cir. 1968); Williams v. Lilley, 67 Conn. 50, 34 A. 765 (1895); Cromwell v. Brooklyn Fire Ins. Co., 44 N.Y. 42 (1870).

[60] Connor v. Northwestern Nat. Cas. Co., 1989 OK 85, 774 P.2d at 1058, quoting Savings Building & Loan Ass'n v. Seaman-Packard Lumber Co., 1935 OK 48, 40 P.2d 660, 662.

[61] Our Court of Appeals has indicated the extent of a mortgagee's insurable interest is the amount necessary to satisfy the note on the mortgage. Johnson v. Allstate Ins. Co., 1993 OK CIV APP 198, 870 P.2d 792, 795 (published by order of the Court of Civil Appeals). Johnson relied, in part, on our opinion in Snethen v. Oklahoma State Union of the Farmers Educational And Co-operative Union of America, 1983 OK 17, 664 P.2d 377, 380, 38 A.L.R. 4th 531, where we noted reasons requiring insured to possess insurable interest and including "to negate any notion or intimation of a wager contract" and to avoid creating a circumstance that would encourage destruction of property for profit.

Cf. Sotelo v. Washington Mut. Ins. Co., 734 A.2d 421, 423 (Pa. Super. Ct. 1999) quoting 3 Couch on Insurance § 42:32 ("The mortgagee's insurable interest is prima facie the value mortgaged, and extends only to the amount of the debt, not exceeding the value of the mortgaged property."); Peacock Hospitality, Inc. v. Association Cas. Ins. Co., 419 S.W.3d 649, 653 (Tex. App. San Antonio 2013, no pet.) ("A mortgagee's [insurable] interest under an insurance policy containing a mortgagee loss-payable clause is limited to the indebtedness which the mortgagor owes under the note and [deed of trust].").

[62] Carr v. Union Mut. Ins. Co., 1979 OK CIV APP 15, 598 P.2d 269 (Court of Civil Appeals' opinion released for publication by order of the Supreme Court on certiorari) (mortgagors in possession of property had an insurable interest after foreclosure and during period of redemption).

[63] Cf. Delk v. Markel American Ins. Co., 2003 OK 88, ¶ 21, 81 P.3d 629, 640 ("The insurer believed it was entering into a contract of indemnity for the full value of the home up to the coverage limits. Its obligations are not increased by the actual status of the legal title to the insured premises. The risk it assumed is the risk it incurred.").

[64] Travel Stop, Inc. v. Alliance Gen. Ins. Co., 1997 OK 138, ¶ 7, 950 P.2d 834, 835-836.

 





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1993 OK CIV APP 198, 870 P.2d 792, 65 OBJ 1042, Johnson v. Allstate Ins. Co.
Discussed
 1979 OK CIV APP 15, 598 P.2d 269, CARR v. UNION MUT. INS. CO.
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 53, 770 P.2d 878, 59 OBJ 1234, Silver v. Slusher
Discussed
 1989 OK 27, 769 P.2d 158, 60 OBJ 536, Roach v. Atlas Life Ins. Co.
Discussed at Length
 1989 OK 85, 774 P.2d 1055, 60 OBJ 1400, Conner v. Northwestern Nat. Cas. Co.
Discussed at Length
 1989 OK 169, 789 P.2d 1282, 60 OBJ 2827, Willis v. Nowata Land and Cattle Co., Inc.
Discussed at Length
 1989 OK 156, 785 P.2d 297, Booker v. Sears Roebuck & Co.
Discussed
 1912 OK 96, 120 P. 1088, 30 Okla. 742, DUFFEY v. SCIENTIFIC AMERICAN COMPILING DEPARTMENT.
Discussed
 1990 OK 109, 799 P.2d 625, 61 OBJ 2719, Travelers Ins. Companies v. Dickey
Discussed
 1992 OK 20, 826 P.2d 603, 63 OBJ 450, Shebester v. Triple Crown Insurers
Discussed at Length
 1993 OK 119, 860 P.2d 236, Townsend v. State Farm Mut. Auto. Ins. Co.
Discussed
 1993 OK 131, 863 P.2d 1176, 64 OBJ 3098, Bonner v. Oklahoma Rock Corp.
Discussed
 1994 OK 52, 875 P.2d 424, 65 OBJ 1854, Thomas v. National Automobile and Casualty Insurance Co.
Discussed
 1994 OK 114, 885 P.2d 657, 65 OBJ 3662, Estate of Eversole, Matter of
Discussed
 1994 OK 20, 896 P.2d 503, 65 OBJ 535, Lewis v. Sac and Fox Tribe of Oklahoma Housing Authority
Discussed at Length
 1935 OK 48, 40 P.2d 660, 170 Okla. 331, SAVINGS BLDG. & LOAN ASS'N v. SEAMAN-PACKARD LUMBER CO.
Discussed
 1935 OK 102, 41 P.2d 77, 170 Okla. 477, CONTINENTAL CAS. CO. v. GOODNATURE
Discussed
 1935 OK 132, 41 P.2d 69, 170 Okla. 510, DRUGGISTS' MUT. FIRE INS. CO. v. SHAW
Discussed
 1916 OK 180, 156 P. 638, 57 Okla. 237, FIDELITY-PHENIX FIRE INS. CO. v. CLEVELAND
Discussed
 1957 OK 15, 308 P.2d 291, COKER v. HUDSPETH
Discussed
 1917 OK 627, 175 P. 45, 71 Okla. 59, MUTUAL BEN. LIFE INS. CO. v. WELCH
Discussed
 1918 OK 618, 177 P. 919, 72 Okla. 30, SMITH & FURBUSH MACH. CO. v. HUYCKE
Discussed
 1958 OK 104, 325 P.2d 1053, OKLAHOMA ST. UNION OF FARM. ED. & COOP. v. FOLSOM
Discussed
 1959 OK 94, 343 P.2d 1066, CHERRY v. CHERRY
Discussed
 1962 OK 197, 375 P.2d 873, AMERICAN IRON & M. WKS. v. INSURANCE CO. OF N. AM.
Discussed
 1962 OK 255, 376 P.2d 596, FARMER v. TREPP
Cited
 2002 OK 34, 55 P.3d 1030, BITUMINOUS CASUALTY CORP. v. COWEN CONSTRUCTION, INC.
Discussed at Length
 1934 OK 684, 44 P.2d 5, 169 Okla. 551, NIAGARA FIRE INS. CO. v. AEBISCHER
Discussed
 1995 OK 141, 913 P.2d 286, 66 OBJ 3909, Wilson v. Glancy
Discussed
 1995 OK 150, 945 P.2d 469, 66 OBJ 1818, Sholer v. State ex rel. Department of Public Safety
Discussed
 2003 OK 88, 81 P.3d 629, DELK v. MARKEL AMERICAN INSURANCE COMPANY
Discussed
 2004 OK 2, 87 P.3d 559, WATHOR v. MUTUAL ASSURANCE ADMINISTRATORS, INC.
Discussed
 2005 OK 48, 121 P.3d 1080, BADILLO v. MID CENTURY INSURANCE COMPANY
Discussed at Length
 1996 OK 28, 912 P.2d 861, 67 OBJ 806, Max True Plastering Co. v. U.S. Fidelity and Guar. Co.
Discussed
 2006 OK 30, 136 P.3d 634, RAY v. RAY
Discussed
 2006 OK 100, 151 P.3d 132, MAY v. MID-CENTURY INSURANCE COMPANY
Discussed at Length
 1924 OK 570, 226 P. 577, 102 Okla. 65, ROSEN v. MARTIN
Discussed
 1924 OK 714, 229 P. 598, 104 Okla. 8, FRENSLEY BROS. LUMBER CO. v. FIREMANS FUND INS. CO.
Discussed
 1976 OK 195, 558 P.2d 400, TORRES v. SENTRY INSURANCE
Discussed
 2014 OK 106, 341 P.3d 75, TRINITY BAPTIST CHURCH v. BROTHERHOOD MUTUAL INSURANCE SERVICES, LLC
Discussed at Length
 2015 OK 56, 352 P.3d 1223, FARGO v. HAYS-KUEHN
Discussed
 2015 OK 73, 362 P.3d 186, McGINNITY v. KIRK
Discussed at Length
 1977 OK 141, 577 P.2d 899, CHRISTIAN v. AMERICAN HOME ASSUR. CO.
Discussed at Length
 2016 OK 113, 387 P.3d 333, MUSTANG RUN WIND PROJECT, LLC v. OSAGE COUNTY BD. OF ADJUSTMENT
Discussed
 2016 OK 114, 385 P.3d 64, MARTIN v. GRAY
Discussed
 1979 OK 43, 592 P.2d 976, PRACHT v. OKLAHOMA STATE BANK
Discussed
 2000 OK 31, 3 P.3d 705, 71 OBJ 965, K & K Food Services, Inc. v. S & H, Inc.
Discussed
 1997 OK 138, 950 P.2d 834, 68 OBJ 3609, TRAVEL STOP, INC. v. ALLIANCE GENERAL INSURANCE CO.
Discussed
 1981 OK 148, 639 P.2d 1228, Keel v. Titan Const. Corp.
Discussed
 1982 OK 97, 653 P.2d 907, Timmons v. Royal Globe Ins. Co.
Discussed at Length
 1949 OK 80, 205 P.2d 288, 201 Okla. 289, WELCH v. MONTGOMERY
Discussed at Length
 1999 OK 44, 981 P.2d 1253, 70 OBJ 1664, Taylor v. State Farm Fire and Casualty Co.
Discussed
 2000 OK 59, 11 P.3d 191, 71 OBJ 2062, Newport v. USAA
Cited
 1943 OK 178, 138 P.2d 76, 192 Okla. 461, NEWMAN v. JACKSON
Discussed
 1983 OK 17, 664 P.2d 377, Snethen v. Oklahoma State Union of Farmers Educational and Co-op. Union of America
Discussed
 1983 OK 41, 662 P.2d 681, Uptegraft v. Home Ins. Co.
Discussed
 1983 OK 103, 678 P.2d 250, Shepard v. Farmers Ins. Co., Inc.
Discussed
 1985 OK 38, 706 P.2d 523, Mercury Inv. Co. v. F.W. Woolworth Co.
Discussed
Title 15. Contracts
 Cite
Name
Level

 15 O.S. 29, Enforcement of Contract by Third Party Beneficiary
Discussed at Length
Title 16. Conveyances
 Cite
Name
Level

 16 O.S. 11A, Constructive Mortgage
Discussed